**In re Jay H. COHEN, Relator.**

**No. 01–10–00804–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 2011.

Kemp W. Gorthey, Austin, TX, Paul D. Moak, McKool Smith, Houston, TX, for Relator.

Andrea Levin Kim, Jason M. Rudd, Diamond McCarthy L.L.P., B. James Reaves, Dale Jefferson, Elizabeth A. Holman, Levon G. Hovnatanian, Martin, Disiere, Jefferson & Wisdom, L.L.P., Darryl W. Malone, Houston, TX, Britton L. Larison, Irving, TX, for Real Party in Interest.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

In this original proceeding, Relator Jay H. Cohen seeks relief from two trial court orders [1] expunging lis pendens on three properties. We conditionally grant his petition for writ of mandamus.

## BACKGROUND

The underlying suit involves claims related to several parcels of real property in Houston. Because a complete recitation of the facts surrounding the underlying dispute is not necessary for our disposition, we limit our discussion to only the facts relevant to this original proceeding. The notices of lis pendens at issue here relate to the following three properties:

(1) 7.7 acre tract at Alabama and Dunlavy that is the subject of a June 24, 2010 "Supplemental Notice of Lis Pendens" ("Alabama/Dunlavy Property");

(2) 1.56 acre tract on East Bissonnet that is the subject of a July 27, 2010 "Second Supplemental Notice of Lis Pendens" ("Bissonnet Property"); and

(3) 2.44 acre tract on West Newcastle that is also the subject of the July 27, 2010 "Second Supplemental Notice of Lis Pendens" ("Newcastle Property").

In the past, Cohen has owned each of these properties. Through a series of transactions over several years, he transferred them into different partnerships. In the underlying suit, he claims that these properties have since been wrongfully and fraudulently encumbered by debt and transferred to others.

On April 10, 2010, acting in his capacity as trustee of trusts that are limited partners in partnerships that now hold or have held the properties, Cohen sued several defendants derivatively on behalf of those partnerships. Between May 5, 2010 and August 27, 2010, he amended his petition four times to add additional defendants and claims. During the course of this litigation, he also filed numerous notices of lis pendens—including the one filed June 24, 2010 related to the Dunlavy/Alabama Property and the one filed July 27, 2010 related to the Bissonnet Property and the Newcastle Property.

### 1. Alabama/Dunlavy Property

On July 23, 2010, Defendants Commerce Equities II, LLC, Flat Stone Development, Inc., Flat Stone II of Texas, Inc., and Alabama & Dunlavy, Ltd. ("Alabama/Dunlavy Defendants") filed a "Motion to Cancel and Expunge Notices of Lis Pendens, and Request for Costs and Fees." This filing challenged the lis pendens filed on several properties, with only the Alabama/Dunlavy Property being relevant here.

The Alabama/Dunlavy Property was the subject of a April 6, 2010 "Notice of Lis Pendens," a May 17, 2010 "Amended Notice of Lis Pendens," a June 17, 2010 "Release of Notice of Lis Pendens" (releasing the April 6, 2010 Lis Pendens), a June 11, 2010 Release of Amended Notice of Lis Pendens (releasing May 17, 2010 "Amended Notice of Lis Pendens"), and a June 24, 2010 "Supplemental Notice of Lis Pendens." The Alabama/Dunlavy Defendants' motion to expunge challenged the notices of lis pendens as void because, these defendants alleged, Cohen's claims related to the Alabama/Dunlavy Property are collateral, rather than direct, and thus are not "seeking title to, an interest in, or encum-

---

**1.** The underlying case is *Cohen v. Dilick*, No. 2010–20973, in the 234th District Court of    Harris County, the Honorable Reece Rondon, presiding.

brance against the real property" sufficient to support lis pendens. Rather, they asserted, Cohen improperly seeks to impose a lis pendens to support "what amounts to a judgment lien." Accordingly, they argued, Cohen "cannot make a showing ... that his pleading contains real property claims."

## 2. Bissonnet and Newcastle Properties

On August 24, 2010, Defendants East Bissonnet, Ltd. and West Newcastle, Ltd. ("Bissonnet/Newcastle Defendants") filed a joinder of the Alabama/Dunlavy Defendants' motion to expunge. This motion challenged the lis pendens on the Bissonnet Property and on the Newcastle Property.

The Bissonnet Property and Newcastle Property were the subject of a July 27, 2010 "Second Supplemental Notice of Lis Pendens." The Bissonnet/Newcastle Defendants argued both that Cohen's pleadings did not state a claim for an interest in real property and that Cohen cannot establish by a preponderance of the evidence the probable validity of any real property claim. This is because, they contend, "[b]ased upon the incontrovertible facts pertaining to Movants' respective ownership of the subject properties, Cohen had no legal right to place Notices of Lis Pendens on Movants' respective real property."

On September 3, 2010, Defendants Matthew G. Dilick and the Bissonnet/Newcastle Defendants filed "The Dilick Defendants' Emergency Motion for Immediate, Expedited Expungement and Cancellation of Lis Pendens." They asserted that the Bissonnet and Newcastle Properties were facing "impending foreclosures" and that

the Second Supplemental Notice of Lis Pendens "prohibits execution of potential contracts that could keep the properties out of foreclosure and profit the Partnerships." They argued that Cohen's filing notices of lis pendens was wrongful, and that the lis pendens on the Bissonnet and Newcastle Properties jeopardized Defendant Dilick's credit because he personally guaranteed notes that will be foreclosed.

## 3. The trial court orders

On September 1, 2010, the trial court signed an "ORDER ON MOTION TO CANCEL AND EXPUNGE NOTICES OF LIS PENDENS, AND REQUEST FOR COSTS AND FEES." That order found that the lis pendens filed on three properties, including the Alabama/Dunlavy Property at issue in this proceeding, void. The order states:

> Plaintiff's allegations in his First Amended Petition do not support any claim that Plaintiff possessed a direct interest in [the Alabama/Dunlavy Property] at the time the notices of lis pendens were filed—and such failure is enough to merit the expunging of lis pendens.[2]

On September 7, 2010, the trial court signed an order granting Dilick's and the Bissonnet/Newcastle Defendants' motion for expedited expungement of the Second Supplemental Notice of Lis Pendens relating to the Bissonnet Property and the Newcastle Property. Unlike the September 1, 2010 order expunging the notice of lis pendens on the Alabama/Dunlavy Property, this September 7, 2010 order did not specify which of Cohen's pleadings were relied upon by the court, and did not state whether the court found Cohen's pleading or Cohen's evidence deficient.

---

2. The court crossed out the following language in the order: "Plaintiff failed to establish by a preponderance of the evidence the probable validity of a real property claim in his First Amended Petition."

In response to Cohen's motion to reconsider, the court signed two further orders refusing reconsideration but clarifying that both its September 1, 2010 and September 7, 2010 orders were made with reference to the Fourth Amended Petition—the live pleading when the motions to expunge were heard—rather than the First Amended Petition that was referenced in the court's September 1, 2010 order. Both orders also state that, in entering both the September 1, 2010 and September 7, 2010 orders, the court "did not consider evidence or make a determination of the sufficiency of the evidence."

### 4. This proceeding

Cohen brought this original proceeding challenging the orders expunging the lis pendens on the Alabama/Dunlavy, Bissonnet, and Newcastle Properties. He also filed a motion to stay the trial court's expungement orders, which we granted on September 30, 2010.

## LIS PENDENS

■ "[D]uring the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property," a party seeking affirmative relief may file a lis pendens in the real property records of the county where the property is located. TEX. PROP. CODE ANN. § 12.007(a) (Vernon Supp. 2010). The notice must contain certain information, including the style and cause number of the proceedings, the court where it is pending, the names of the parties, identification of the kind of proceedings, and a description of the property affected. TEX. PROP.CODE ANN. § 12.007(b). A properly filed lis pendens is not itself a lien, but rather it operates as constructive notice "to the world of its contents." *See* TEX. PROP.CODE ANN. § 13.004(a) (Vernon 2003); *see also B & T Distribs., Inc. v.*

*White,* 325 S.W.3d 786, 789 (Tex.App.-El Paso 2010, no pet.) ("The purpose of a notice of *lis pendens* is to put those interested in a particular tract of land on inquiry about the facts and the issues involved in the suit and to put prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation.").

■ To challenge notices of lis pendens that, as here, were filed after September 1, 2009, a party may file an application to have a lis pendens expunged. TEX. PROP. CODE ANN. § 12.0071 (Vernon Supp. 2010). The court must grant the motion if (1) "the pleading on which the notice is based does not contain a real property claim," or (2) "the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim." TEX. PROP.CODE ANN. § 12.0071(c). Prior to section 12.0071's enactment in 2009, a party could similarly obtain cancelation of a lis pendens by establishing that the suit upon which the lis pendens is based involved a collateral, rather than direct, interest in real property. *E.g., In re Collins,* 172 S.W.3d 287, 293 (Tex.App.-Fort Worth 2005, orig. proceeding). This is because "the property against which the lis pendens is filed must be the subject matter of the underlying lawsuit." *Id.* If the suit seeks a property interest only to secure the recovery of damages or other relief that the plaintiff may be awarded, it is not "an action involving: (1) title to real property, (2) the establishment of an interest in real property, or (3) the enforcement of an encumbrance against real property" as required by section 12.007 to render a notice of lis pendens proper. *Flores v. Haberman,* 915 S.W.2d 477, 478 (Tex.1995) (orig. proceeding).

Before section 12.0071 was enacted, there was a split in authority about whether the classification of a claim as direct or

collateral should be made solely by reference to the pleadings or by examining the evidence. *E.g., Collins,* 172 S.W.3d at 293–94 (comparing pleadings-only approach of this Court and Austin with the evidence-inclusive approach of Beaumont and Tyler, while noting Dallas has taken both approaches). The new section 12.0071 resolves that split, expressly providing avenues for both by allowing expungement based on the (1) failure to adequate plead "a real property claim," or (2) failure to demonstrate by a preponderance of the evidence "the probable validity of the real property claim." TEX. PROP.CODE ANN. § 12.0071(c).

Because the trial court specifically limited its consideration to the pleadings, our review is limited to whether "the pleading on which the notice is based does not contain a real property claim" under section 12.0071(c)(1). There are no appellate cases yet reviewing the expungement of a lis pendens under section 12.0071. We conclude, however, that prior cases determining whether a claim is one "involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property" with reference only to the pleading under section 12.007 are instructive in assessing what qualifies as adequately pleading "a real property claim" under the new section 12.0071.

## DID COHEN SUFFICIENTLY PLEAD REAL PROPERTY CLAIMS?

The parties disagree about (1) which of Cohen's pleading are relevant, and (2) whether Cohen adequately pleaded real property claims.

### 1. Pleadings to be Considered

The trial court's conclusion that Cohen failed to sufficiently plead a real property claim was made with reference to his Fourth Amended Petition—his live petition at the time the court expunged the notices of lis pendens. Cohen likewise focuses on the Fourth Amended Petition in arguing that he adequately pleaded real property claims.

Dilick, the Alabama/Dunlavy Defendants and the Bissonnet/Newcastle Defendants argue that the relevant pleading is not the Fourth Amended Petition, but rather the First and Second Amended Petitions—the live pleadings when the notices of lis pendens on the relevant properties were filed.[3] They note section 12.0071(c)'s provision permitting a notice of lis pendens *"during the pendency of an action* involving title to real property ..." and section 12.007(a)'s providing for expungement if the court determines *"the pleading on which the notice is based* does not contain a real property claim." This statutory language, they argue, means that "in analyzing the propriety of a notice of lis pendens the trial court must consider the pleading that was live *at the time the plaintiff filed the notice of lis pendens."*

In support of their position, these defendants cite *In re Kroupa–Williams,* a case in which the court looked the plaintiff's live pleading at the time the lis pendens was filed to determine whether it sufficiently pleaded a real property interest. *See* No. 05–05–00375–CV, 2005 WL 1367950, at *3 (Tex.App.-Dallas June 10, 2005, orig. proceeding) (mem. op.). In contrast, Cohen

---

**3.** Real party in interest Texas Abercrombie Family Interests does not distinguish between Cohen's various petitions in its response to Cohen petition for writ of mandamus, instead referring simply to Cohen's "pleadings" and the allegations in Cohen's brief in this Court in arguing that Cohen has failed to adequately plead a real property claim. Real party in interest SE Texas Note Acquisitions 2010–11, LLC argues that Cohen failed to adequately plead a real property claim in both his Second and Fourth Amended Petition.

cites *Countrywide Home Loans, Inc. v. Howard,* for the proposition that "the validity of a filing of a notice of lis pendens is judged by the pleadings on file at the time the transaction with respect to the property occurred." 240 S.W.3d 1, 5 (Tex.App.-Austin 2007, pet. denied).[4] Cohen further contends that *Kroupa–Williams* is consistent with *Countrywide* because the plaintiff's live petition at the time the notice of lis pendens was filed in the *Kroupa–Williams* case was also the live petition at the time of the relevant transaction—the sale of the land. *See Kroupa–Williams,* 2005 WL 1367950, at *2.

For the reasons articulated below, we conclude that even accepting the argument of some real parties in interests that the First and Second Amended Petitions, rather than the Fourth Amended Petition, are the relevant pleadings, Cohen sufficiently pleaded a real property claim. Thus, we need not decide here whether the relevant pleading is the petition on file when the notice of lis pendens is filed or the petition on file when the relevant transaction occurs.

### 2. Alabama/Dunlavy Property

The Alabama/Dunlavy Property is the subject of the June 24, 2010 "Supplemental Notice of Lis Pendens." Relevant to the Alabama/Dunlavy Property, Cohen's First Amended Petition, filed May 5, 2010 and the live pleading when the Supplemental Notice of Lis Pendens was filed, contains the following allegations:

2. Plaintiff, Jay H. Cohen, is the settler, a co-trustee and a beneficiary of the JHC Trusts I and II (the "Trusts"), and brings this suit solely on behalf of and in his capacity as trustee of the Trusts, which are limited partners in the Partnerships described ... including derivatively on behalf of the Partnerships. The trust[s] have not attempted to secure initiation of this action by the purported general partners of the Partnerships because the purported general partners are Defendants in the case.
. . . .

8. Defendant, Commerce Equities II, LLC is the purported general partner of a Texas limited partnership known as Alabama & Dunlavy, Ltd. .... [Defendant] Dilick owns and/or controls Commerce Equities II, [and other entities]. They are his alter egos. ... The Trusts are 80% limited partners in the Partnerships. Dilick personally committed the acts and omission complained of herein, or caused the Dilick entities he owns and/or controls to commit them ...

9. This is a suit to remove Dilick and the Dilick entities as purported general partners of the Partnerships, for an accounting, for injunctive relief, for actual and exemplary damages, and *to set aside liens on or transfers of properties owned by the Partnerships.*
. . . .

16. Until on or about February 26, 2010, Alabama & Dunlavy owned legal title to a tract of land of approximately 7.6877 acres located at Alabama and Dunlavy Streets in Houston, Harris County, Texas. Dilick collateralized over $13 million in loans with liens on this property.... [A] substantial amount of the loans were used by Dilick

---

4. As previously discussed, a notice of lis pendens is not a lien, but instead operates as a notice placeholder in the real property records of the plaintiff's potential interest in real property. Specifically, the notice puts "prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation." *Countrywide,* 240 S.W.3d at 4. Under *Countrywide,* the analysis would thus compare the date of the pleading containing a real property claim with the date of any transaction involving the property at issue to determine if the property interest conveyed in that transaction would be encumbered by the plaintiff's property interest, if any, arising in the litigation.

for his own personal benefit and ...,
therefore, *the loans, were, in whole or
in part, unauthorized, ultra vires, and
fraudulent transfers.*

17. On or about February 26, 2010,
Dilick purportedly sold the 7.6877 acre
tract to Defendant, Abercrombie, for ap-
proximately $13.5 million. Shortly prior
to the purported sale of the property to
Abercrombie, Dilick had filed pleadings
in cases pending in the Harris County
District Court in which he alleged that
the value of the property was in excess
of $20 million, based upon recent ap-
praisals. Abercrombie is owned or con-
trolled by close associates of Dilick.
The sale was not an arms [sic] length
transaction. Dilick did not disclose and
fraudulently concealed this transaction
from Plaintiff....

18. The entire transaction involving
the purported sale of the Alabama &
Dunlavy property was part of a conspir-
acy and scheme of Dilick to use the
property as collateral for loans that
were substantially for his own personal
benefit and then once the loans would no
longer be renewed, purportedly to sell
the property to an entity controlled by
close associates thereby gaining ultimate
control of the property. This plan and
scheme constitutes, among other things,
self dealing by a fiduciary and misappli-
cation of fiduciary property under Texas
Penal Code, Section 21, 45, and is, to-
gether with all transactions purportedly
conducted as part of this scheme and the
sales and liens purportedly made or
granted pursuant to those transactions,
void. *By this suit, Plaintiff seeks
judgment setting aside the purported
transfer of the Alabama & Dunlavy
property and cancelling the purported
lien thereon.*

(emphasis added).

3. **The Bissonnet and Newcastle
Properties**

The Bissonnet Property and the New-
castle Property are the subject of the July
27, 2010 "Second Supplemental Notice of
Lis Pendens." Relevant to the Bissonnet
and Newcastle Properties, Cohen's Second
Amended Petition, filed July 26, 2010 and
the live pleading when the Second Supple-
mental Notice of Lis Pendens was filed,
contains the following allegations:

2. Plaintiff, Jay H. Cohen is the sett-
ler, a co-trustee and beneficiary of the
JHC Trusts I and II (the "Trusts"), and
brings this suit solely on behalf of and in
his capacity as trustee of the Trusts,
which are limited partners in the Part-
nerships described below, and deriva-
tively on behalf of the Partnerships....
On March 30, 2010, ... [i]n the instru-
ment appointing Cohen as co-trustee,
Howard Hebert, the only other co-trus-
tee of the Trusts, delegated to Cohen
the authority to act on behalf of the
Trusts, expressly providing that Cohen
"shall have and may exercise any and all
powers of the Trustee under the agree-
ment creating the Trust." Plaintiff has
not attempted to secure initiation of this
action by the purported general part-
ners of the Partnerships because the
purported general partners are Defen-
dants in the case.

. . . .

7. Defendant ... Flat Stone Devel-
opment, Inc, is the purported general
partner of a Texas limited partnership
known as Flat Stone Ltd. Defendant,
Flat Stone II of Texas, Inc., is the pur-
ported general partner of a Texas limit-
ed partnership known as Flat Stone II,
Ltd. Dilick owns and/or controls ...
Flat Stone Development, Inc., and Flat
Stone II of Texas, Inc. They are his
alter egos. Hereinafter ... Flat Stone
Development, Inc. and Flat Stone II of

Texas, Inc. will be referred to collectively as the "Dilick entities" and . . . Flat Stone, Ltd., and Flat Stone II, Ltd. will be referred to collectively as the "Partnerships." The Trusts are 80% limited partners in the Partnerships. Dilick personally committed the acts and omissions complained of herein, or caused the Dilick entities he owns and/or controls to commit them, including the acts and omissions of the Dilick entities acting in their capacity as purported general partners of the Partnerships.

. . . .

9. Cohen . . . in or about 2002 and 2003, contributed to the Partnerships five valuable commercial properties in Houston (referred to herein as "the properties" . . .) that he individually (or the Trusts) owned. . . . The goal was to have Dilick, who purportedly had development experience, develop the properties so as to make them income producing. . . .

. . . .

10. . . . [Dilick] . . . along with Abercrombie, pledge[d] the properties as collateral for over $30 million in loans. He also purported to convey legal title to three of the properties to either entities wholly controlled by himself (The Bissonnet/Newcastle Defendants), or to an entity controlled by his friend, Abercrombie, (TAFI). . . .

. . . .

12. *The purpose of this suit is to rescind, cancel and set aside the transfers and conveyances of interests in the properties made by Dilick and the Dilick entities as purported general partners of the Partnerships, to restore title to the properties in the Partnerships,* to disgorge and terminate any interest of Dilick or the Dilick entities in the Partnerships, to terminate and dissolve the Partnerships, to secure

an accounting, to secure temporary injunctive relief to maintain the status quo during the pendency of this suit, to recover actual and exemplary damages and attorney's fees, *and to recover and/or impose constructive trusts on fraudulently transferred properties* and proceeds thereof, including proceeds of fraudulently transferred interest in the properties.

13. Until the formation of Flat Stone II, Cohen, individually, was the 100% owner of legal title to a 1.56 acre tract of land located at 4400 Bissonnet Road, [and] a 2.43 acre tract located at the Northeast corner of Newcastle Street and Bissonnet Road containing six residential lots and approximately 1.5 acres of commercial properties. . . .

14. In 2006, Dilick, without the knowledge or consent of Plaintiff, borrowed $4,000,000 for Regions Bank for his personal use, and fraudulently executed a deed of trust pledging Flat Stone IPs interest in the 1.56 and 2.43 acre tracts to Regions Bank. . . .

. . . .

18. . . . *The lien on the 1.56 and 2.43 acre tracts was ultra vires, unauthorized and a fraudulent transfer, and should be set aside and cancelled.*

19. In 2009, Dilick executed deeds on behalf of Flat Stone II, purportedly conveying title to these properties to East Bissonnet Ltd. (the 1.56 acre tract). And West Newcastle, Ltd. (the 2.43 acre tract). These conveyances were also without the knowledge or consent of Plaintiff. Dilick did not disclose and fraudulently concealed these transactions from Plaintiff. No consideration was paid to Flat Stone II for the transfers.

. . . .

21. . . . *The transfers of the 1.56 and 2.43 acre tracts to the Bisson-*

*net/Newcastle Defendants were ultra virus, unauthorized and fraudulent, and should be set aside and cancelled.*

. . . .

*31. Transactions purportedly conducted as part of this scheme, including the liens and transfers of title purportedly made or granted pursuant to those transactions, are unauthorized, ultra vires, fraudulent transfers and/or void. Plaintiff is entitled to judgment rescinding, cancelling and setting aside the transfers of title to the 1.56 acre and 2.43 acre tracts to the Bissonnet/Newcastle Defendant . . . . Plaintiff is also entitled to judgment canceling and rescinding the liens on the 1.56[and] 2.43 . . . acre tracts and the properties securing the notes . . . .* Plaintiff is also entitled to judgment for recovery of the proceeds of all loans against all Partnership properties, [and] imposition of a constructive trust on all property acquired with all loan proceeds. . . .

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

. . . .

(C) *Entry of judgment canceling transfers of title to and liens against Partnership properties, restoring title to the Partnership properties in the Partnerships, recovering proceeds of loans and fraudulent transfers and imposing constructive trusts on properties acquired with proceeds of purported sales, loans or other disposition of interests in fraudulently transferred properties.*

(emphasis added).

### 4. Analysis

█ Cohen argues that because these petitions specifically seek recovery of the real property at issue, and because he seeks to alternatively impose constructive trusts on fraudulently transferred properties, he has adequately pleaded a real property claim.

In response, real-parties-in-interest Dilick, the Alabama/Dunlavy Defendants and the Bissonnet/Newcastle Defendants argue that the trial court's expungement orders related to the Alabama/Dunlavy Property, the Bissonnet Property and the Newcastle Property were each properly entered because Cohen, as a mere "co-trustee" of the trusts that are limited partners in the partnerships that previously owned the properties at issue, "is not entitled to bring derivative claims on behalf of those partnerships." They further contend that, because returning title to the Bissonnet and Newcastle Properties to the partnership that formerly owned them would not technically alter that partnership's ownership interest or control over the properties, "Cohen's prayer for return of title does not support a real property claim" as to those two properties.[5]

Texas Abercrombie Family Interests, L.L.C., ("TAFI") the current owner of the Alabama/Dunlavy Property, also filed a response in opposition to Cohen's petition for

---

5. Flat Stone II, Ltd. owned the Bissonnet and Newcastle Properties before the properties were transferred from Flat Stone II, Ltd. to East Bissonnet, Ltd. and West Newcastle, Ltd. In the underlying lawsuit here, Cohen seeks these properties' return to Flat Stone II, Ltd. "[B]ecause Flat Stone II, Ltd. is the sole beneficiary of East Bissonnet, Ltd. and West Newcastle, Ltd." and because "Flat Stone II, Ltd., East Bissonnet, Ltd., and West Newcastle, Ltd. are all controlled by Matt Dilick," these real-parties-in-interest assert that, even if Cohen secured return of the properties to Flat Stone II, Ltd., the "beneficial interest" would not change and the "control" over the properties would not change. Thus, they reason, by seeking return of the properties to Flat Stone II, Ltd., Cohen does not assert a "real property claim."

writ of mandamus. TAFI argues that the "Alabama & Dunlavy property is different from the other properties covered by the various notices." Specifically, TAFI contends that it (1) was a bona fide purchaser for value of the property from Alabama & Dunlavy, Ltd. before the underlying suit was filed, (2) borrowed purchase money before the underlying lawsuit was filed, (3) entered a long-term lease on the property before the underlying lawsuit was filed, and (4) with the consent of Cohen, closed this long-term lease after the underlying lawsuit was filed, and (5) with the consent of Cohen, closed its permanent financing on the purchase of the property after the underlying lawsuit was filed. Thus, according to TAFI, "rescission or cancellation of the pre-lawsuit sale and purchase of *this* property is not possible, because restoration of the Property and the parties to the status quo ante is not possible," so the trial court's expunging the lis pendens on this property was proper. Recognizing that the trial court's ruling was made on the pleadings, TAFI alternatively requests—if the Court concludes that Cohen has properly alleged a direct real property claim—that we remand "to the trial court for an evidentiary hearing concerning whether Cohen can 'establish by a preponderance of the evidence the probable validity of the property claim."

SE Texas Note Acquisitions 2010–11, LLC ("Texas Note")—a party that owns the Regions Bank promissory note to Matthew Dilick secured by the Bissonnet Property and Newcastle Property—also filed a brief in opposition to Cohen's petition for writ of mandamus. In addition to adopting the positions of Dilick, the Alabama/Dunlavy Defendants and the Bissonnet/Newcastle Defendants, Texas Note argues that Cohen fails to state a claim against Regions Bank and Texas Note, much less a "real property claim." Texas Note asserts that because Flat Stone II, Ltd., the entity Cohen purports to derivatively represent, has no claim for fraudulent transfer, Cohen's claim for fraudulent transfer is foreclosed. Texas Note further argues that Cohen has asserted no wrongdoing by Regions Bank, and thus the trial court's expunging the lis pendens affecting the Bissonnet Property and the Newcastle Property was correct. Finally, Texas Note argues that Cohen has waived his right to support his notice of lis pendens by alternatively "establish[ing] by a preponderance of the evidence the probably [sic] validity of the real property claim," but requests this Court remand for an evidentiary hearing if the Court concludes that Cohen has pleaded a real property claim related to the Bissonnet Property and the Newcastle Property.

In evaluating whether a plaintiff has sufficiently pleaded a real property claim for purposes of supporting a notice of lis pendens, this Court has consistently held that a pleading requesting the restoration of a prior ownership interest in a particularly identified property—through actual title or a constructive trust—is sufficient. *E.g., First Nat'l Petroleum Corp. v. Lloyd*, 908 S.W.2d 23, 25 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding) (reversing trial court order cancelling lis pendens because petition alleged "that a constructive trust in favor of [plaintiffs] should be imposed on the property covered by the notice of lis pendens and asked that title to the property be" returned to plaintiffs); *Hughes v. Houston Nw. Med. Ctr.*, 647 S.W.2d 5, 7 (Tex.App.-Houston [1st Dist.] 1982, writ dism'd) (reversing trial court order cancelling lis pendens because as "shown by the allegations in the plaintiffs' petition, the true nature of their action is to set aside certain contracts affecting the title to land ... and to impose a constructive trust upon the title to said property, ... [which] involves a claim of an interest

or right in the land"); *see also In re Mousa*, No. 01–04–00485–CV, 2004 WL 2823172, at *2 (Tex.App.-Houston [1st Dist.] Dec. 9, 2004, orig. proceeding) (mem. op.) ("A party's assertion that they are entitled to recover the property at issue in the lawsuit sufficiently states a claim coming within the provisions of the lis pendens statute."). This Court has also upheld the validity of a notice of lis pendens filed on specifically identified property alleged to have been purchased with "the fruits" of the defendant's fraud on the plaintiff. *Teve Holdings, Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex.App.-Houston [1st Dist.] 1988, no writ) (holding lis pendens proper, when "the pleadings not only sought a constructive trust but also plaintiffs prayed that they be awarded an interest in specifically described property, to prevent the unjust enrichment of the defendant").

In contrast, in cases in which the plaintiff requests title to the property, or a constructive trust, only to satisfy a money judgment against the defendant, courts have found cancellation of lis pendens proper because those claims do not involve a sufficient direct interest in real property. *See, e.g., Flores*, 915 S.W.2d at 478 (holding notice of lis pendens was improper because "plaintiffs seek a constructive trust in the purchased properties only to satisfy the judgment they seek against" the defendant, which "is no more than a collateral interest in the property"); *In re Watts*, No. 01–02–01247–CV, 2003 WL 204879, at *1 (Tex.App.-Houston [1st Dist.] Jan. 30, 2003, orig. proceeding [mand. denied]) (mem. op.) (holding that "notice of lis pendens was improperly filed" because plaintiff sought constructive trust in real property only to satisfy a money judgment against the defendant and distinguishing facts from cases in which plaintiff claims an interest in property); *Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex.App.-Houston

[14th Dist.] 1986, orig. proceeding) (holding that plaintiff's "pleading that a lien be imposed against the ... property is essentially a prayer for a judgment lien, affects the property only collaterally, and does not come within the provisions of § 12.007" because plaintiff "does not seek recovery to the title to relator's property nor to establish an interest in the home except as security for the recovery of any damages he may be awarded" against defendant).

Cohen does not seek a judgment lien, but instead requests that real property liens and title transfers be set aside, and that a constructive trust be placed on properties he alleges were fraudulently transferred. These are real property claims sufficient to support a notice of lis pendens. *First Nat'l Petroleum Corp.*, 908 S.W.2d at 25; *Hughes*, 647 S.W.2d at 7. The trial court thus erred by expunging Cohen's lis pendens on the Alabama/Dunlavy, Bissonnet, and Newcastle Properties.

We do not opine on the merits of the real-parties-in-interests' numerous arguments here as they do not go to the sufficiency of Cohen's pleadings. *E.g., Hughes*, 647 S.W.2d at 8 (reversing order cancelling lis pendens because "record shows that the trial court's order was based entirely upon a legal conclusion that the plaintiffs were not entitled, as corporation shareholders, to file or maintain a lis pendens notice against the property covered by the corporation's executory contract of sale" rather than by reference only to the pleadings when plaintiffs alleged they were acting in their "derivative capacity"). Real parties in interests' arguments are instead relevant to (1) whether Cohen can prevail on his real property claims, and (2) what particular defendants' property interest would be burdened by any property interest of Cohen's established in the underlying litigation. These issues have yet to be ad-

dressed by the trial court, rendering review of them here premature.

## CONCLUSION

We hold the trial court erred in cancelling Cohen's notices of lis pendens based on the pleadings alone. "Mandamus has been recognized as the appropriate remedy when issues have arisen concerning the issuance of notices of lis pendens." *First Nat'l Petroleum Corp.*, 908 S.W.2d at 24–25; *Flores,* 915 S.W.2d at 478. We thus conditionally grant Cohen's petition for writ of mandamus and direct the trial court to vacate its orders expunging the lis pendens based on the pleadings. This directive does not bar further evidentiary proceedings on this matter under section 12.0071(c) of the Texas Property Code, nor does it address an order dissolving the notices of lis pendens should Cohen fail to carry his evidentiary burden.