# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2020

Lyle W. Cayce
Clerk

No. 20-10581

In re: Huffines Retail Partners, L.P.; The Haley Angelica Huffines 2019 Trust Dated February 19, 2019, As Successor in Interest to the Haley Angelica Huffines 1995 Trust Dated October 26, 1995, also known as Haley Angelica Huffines 1995 Children's Trust; The Garrett James Huffines 2019 Trust Dated February 19, 2019, As Successor in Interest to the Garrett James Huffines 1995 Trust Dated October 26, 1995, also known as The Garrett James Huffines 1995 Children's Trust; The Hayden Hartwell Huffines 2019 Trust, As Successor in Interest to the Hayden Hartwell Huffines 1995 Trust Dated October 26, 1995, also known as The Hayden Hartwell Huffines 1995 Children's Trust; The Colin 1996 Investment Trust U/A/D/ May 10, 1996, As Successor in Interest to the Donald B. Huffines 1996 Children's Investment Trust Dated May 10, 1996; The Devin 1996 Investment Trust Fund U/A/D May 10, 1996, As Successor in Interest to the Donald B. Huffines 1996 Children's Investment Trust Dated May 10, 1996; The Dierdre 1996 Investment Trust U/A/D May 10, 1996, As Successor in Interest to the Donald B. Huffines 1996 Children's Investment Trust Dated May 10, 1996; The Russell 1996 Investment Trust U/A/D May 10, 1996, As Successor in Interest to the Donald B. Huffines 1996 Children's Investment Trust Dated May 10, 1996; The Terence 1996 Investment Trust U/A/D May 10, 1996, As Successor in Interest to the Donald B. Huffines 1996 Children's Investment Trust Dated May 10, 1996; Huffines Plano Properties, L.P.; The Phillip W. and Holly A. Huffines 2011 Children's Trust, for the use and benefit of Haley Angelica Huffines U/A/D August 23, 2011; The Phillip W. and Holly A. Huffines 2011 Children's Trust, for the use and benefit of Garrett James Huffines U/A/D August 23, 2011; The Phillip W. and Holly A. Huffines 2011

CHILDREN'S TRUST, FOR THE USE AND BENEFIT OF HAYDEN HARTWELL HUFFINES U/A/D AUGUST 23, 2011; RIVERSIDE DPH, L.P.; HC OPERATING, L.P.; THE PHILLIP HUFFINES1996 TRUST U/A/D JUNE 26, 1996, ALSO KNOWN AS THE PHILLIP HUFFINES 1996 TRUST; THE DONALD HUFFINES1996 TRUST U/A/D JUNE 26, 1996, ALSO KNOWN AS THE DONALD HUFFINES 1996 TRUST; HC HARMONY HILL MANAGER, INCORPORATED; HC LHFJ WILMER, L.P.; BENBROOK WINCHESTER,, L.P.,

PETITIONERS.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2425

---

Before JONES, HIGGINSON, AND OLDHAM, *Circuit Judges*

ORDER:

For reasons stated below, the petition for mandamus filed in this case by HC Operating, LP, and others, is GRANTED. The district court shall withdraw its orders dated April 8 and May 5, 2020, and shall order expunction of the Notices of Lis Pendens filed in this case.

The Petitioners are members of multiple limited liability companies (LLCs/Sellers) that own, operate and are developing multi-family housing units in the towns of Lewisville and Rowlett, Texas. Respondents including Atlas Apartments Acquisition, LLC (Purchasers) entered into multiple agreements to acquire all of the Membership Interests in the LLCs that possessed title to various tracts of land. The purchased interests included control of, inter alia, the Hebron 121 Station and Harmony Hill apartments,

operating and income producing apartment buildings, member capital accounts, two ongoing construction projects, existing loans on the real property, construction loans for real property development and a parcel of undeveloped land. The agreements memorializing these acquisitions, which were signed by Atlas and one or more of the Sellers on October 3, 2018 at the latest, were titled Membership Interest Purchase Agreements and designated as Hebron 1-4 Agreement, Hebron 5 Agreement, Hebron 6 Agreement, Harmony 1 Agreement and Harmony 2 Agreement. The agreements were amended numerous times.

The Agreements were predicated on obtaining certain lender consents. During summer 2019, such consents failed to materialize, and scheduled closing did not occur. When any possible closing date passed by September, the Agreements expired by their own terms. Sellers filed suit in state court on that date alleging breach of contract and breach of guaranty claims, and the case was soon removed to federal court.

In early December, Purchasers filed two Notices of Lis Pendens, in Denton County and Dallas County real property records. Sellers moved to expunge the Notices, followed by related pleadings, which were forwarded to a magistrate judge for recommendations. On each such pleading, the magistrate judge issued findings, conclusions and recommendations denying relief, and the district court accepted his recommendations. As a result, the district court denied Motions to Expunge Lis Pendens Notices, and Motions to Cancel the notices. Sellers allege the existence of the Notices ties up title to approximately 102 acres of real property valued at approximately $365 million. Sellers contend that mandamus by this court is required to correct the district court's clear abuse of discretion.

This court is constrained to issue writs of mandamus only in situations that amount to a clear abuse of judicial power or judicial usurpation. *Cheney*

*v. United States Dist. Ct. for DC*, 542 U.S. 367, 380 (2004). The preconditions for such a writ are that (1) petitioner "[must] have no other adequate means of obtaining his desired relief; (2) the right to a writ must be "clear and indisputable"; and (3) even if the first two parts are satisfied, the court must be satisfied that issuance of the writ is "appropriate under the circumstances." *Id.* at 380-81(internal citations omitted). Although this court has written frequently on the permissible grounds for mandamus relief,[1] our en banc decision well states the controlling considerations. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 309-310 (5th Cir. 2008). Drawing from Supreme Court authorities, we admonished that the writ cannot be granted to correct "a mere abuse of discretion, even though such might be reversible on a normal appeal." We noted the usual standard for abuse of discretion review: whether the disputed order relies on clearly erroneous factual findings; relies on erroneous conclusions of law; or misapplies the law to the facts. *Id.* And then we cautioned: "On mandamus review, we review for these types of errors, but we will only grant mandamus relief when such errors produce a patently erroneous result." *Id.* Chastened by this stringent reasoning, we proceed to analyze the petition in this case.

After careful review of the record, we conclude that the district court misread the governing acquisition documents, misapprehended Texas law regarding notices of lis pendens, misapplied the facts to the law and therefore acquiesced in a gross abuse by Purchasers of state lis pendens law.

### 1. Acquisition documents

By its express terms, a "Membership Interest Purchase Agreement" was executed covering Phases 1, 2, 3 and 4—Hebron 121 Station (Hebron 1-

---

[1] *See, e.g.*, *Sammons v. Economou*, 940 F.3d 183, 187 (5th Cir. 2019); *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018); *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011).

4 Agreement), and a separate, similar "Membership Interest Purchase Agreement" covering Phase 5—Hebron 121 Station (Hebron 5 Agreement). These are not, whatever else they may be, documents simply about real estate.[2] For instance, the "whereas" clauses identify the Hebron 1-4 transaction as a restructure of certain existing LLCs, including the creation of a new entity, followed by the new entity members, together with the LLC that owns Hebron Phase 4, becoming the "Seller" of the "Membership Interests."

Article II describes the Purchase and Sale of "Membership Interests." Section 2.01. In so doing, the Sellers "acknowledge" that the sale will encompass all of the Company's rights to identified property. The property, in turn, comprises the apartment projects' real estate parcels, but separate paragraphs of that section also include appurtenances, improvements, personalty, assumed contracts, intangible property, and tenant leases. To "acknowledge" what is owned by the selling members and their Company is not to "sell" the property alone, but to warrant that the business entity owns what is being purchased. Interpreting this acknowledgement as a freestanding real estate parcel sale is simply not what the parties contemplated or were doing.

The fact that the sale of the membership interests depended on a clean, or fixed-up title survey and policy is hardly a surprise. Similar provisions throughout the Membership Interest Purchase Agreements embody assurances and permit audits for the purchasers to verify the ownership and status of the other "property" in the business entity. Numerous schedules and exhibits and warranties effectuate the purchaser's rights and expectations. The Hebron 5 Agreement varies in form and representations because, although also a sale of membership interests, it

---

[2] Hebron 6 is excluded from this discussion because it is plainly a real estate deal.

concerns an ongoing construction project for which separate documentation was required. Again, the existence of a title policy alone or a closing statement from a title company does not detract from the overall transactional character as a sale of entity interests.

Finally, the fact that Hebron 6 is documented purely as a real estate sale reinforces the idea that the other agreements were not mere real estate transactions. It states that "[e]ach Seller agrees to sell to Purchaser . . . all of such Seller's right, title and interest in and to . . . the respective Parcels of unimproved real property, including all right, title, and interest therein, owned by Phase 6 Seller. . . ."

### 2. Texas Law

Two questions of Texas law are posed here. First, does the underlying lawsuit "involve title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property," which are the criteria for a notice of lis pendens? Tex. Prop. Code Sec. 12.007(a). Second, what evidence is pertinent to making this decision?

*In re Cohen*, 340 S.W.3d 889, 892-93 (Tex. App. 2011) noted that under current law, a party may seek to overturn a lis pendens based on either (1) the pleadings' failure adequately to assert a "real property claim", or (2) failure to prove by a preponderance the "probable validity of the real property claim." Tex. Prop. Code Sec. 12.0071(c); *see also Maniatis v. SLF IV-114 Assemblage, LP*, No. 06-18-00061-CV, 2019 WL 1560680 (Tex. App. Apr. 11, 2019). The district court here rested its conclusion on the latter proposition, as it found a genuine fact issue whether the parties' transaction is in essence a real estate sale. We disagree with the court's proceeding to the second statutory alternative and find the first alternative unsatisfied.

First, the Purchasers' counterclaim is not a "real property claim." Their counterclaim seeks recovery for multiple alleged breaches of the

Membership Interest Purchase Agreements and injunctive relief that would order the sellers to complete the sales of those interests. On its face, the pleading does not "involve" the actual titles to real property or the establishment of a direct interest in real property underlying the sales contracts. Among other remedial requests, to accomplish specific performance of the Agreements, the Purchasers request an injunction to prevent the Sellers from disposing of any of the properties and assets "identified in any of the Agreements" or from permitting any lien or encumbrance to be placed on any properties or assets "identified in any of the Agreements." Specific performance of the Membership Interest Purchase Agreements, *i.e.* contracts for entities that own real property, is not specific performance of a contract for deed or specific performance to transfer deeds or specific performance to recognize ownership of real property subject to a title dispute. In fact, the only injunctive relief sought here that pertains to the real property is negative. That is, the Purchasers would prevent the Sellers from disposing of the real property to anyone else; they do not pray for the real property titles to be transferred to them.

Texas law interpreting the lis pendens statute corroborates that the Purchasers' contract-based counterclaim here, considering the pleadings alone as permitted by *Cohen,* did not "involve" title to real property and instead implicated the real property only "collaterally." In such situations, notices of lis pendens were held void or impermissible. Two cases construing similar transactions are virtually on point. *See In re Med Plus Equity Inv., LP*, No. 0-50-05-00404-CV, 2005 WL 1385238 (Tex. App. Jun. 13, 2005) (because claims pled "would only address an interest in the partnership, [a]n interest in the partnership is distinct from an interest in real estate which may be owned by the partnership" and lis pendens is void); *Mangione v. Jaffe*, 61 S.W.3d 591, 593 (Tex. App. 2001) (suit for specific performance of a sales contract merely affecting land, where a mall was the only partnership

property, was breach of contract that did not involve a claim of an interest or right in the underlying land). Our research has found no cases to the contrary concerning this specific type of transaction.[3]

The district court here relied on the magistrate judge's report following an evidentiary hearing, which allegedly produced a genuine fact issue as to whether the parties' transaction involved title to real estate as provided in the statute. Contrary to the court's view, *In re Collins* fails to support the use of extrinsic evidence here. The basic issue in that case was whether the claimants had been defrauded of their ownership interest in a shopping mall. The court found a fact issue was raised by the evidence "on the question of whether the Collins parties have a direct interest in the Mall property . . ." 172 S.W.3d 287, 297. Moreover, the transaction creating the fact issue was based in part on an oral understanding. Title to the property was fundamentally at issue.

This case, in contrast, arises from membership interest purchase agreements that cover hundreds of pages and are complete in themselves. Fraud is not alleged, nor is the counterclaim premised on oral (mis)understandings. The Purchasers, instead, seek to enforce the contracts as they construe them. In such circumstances, Texas law holds that the interpretation of the contracts is a matter of law. *Reliant Energy Servs. v Enron Can. Corp.,* 349 F.3d 816, 821 (5th Cir. 2003). Thus, "extrinsic" testimonial evidence is irrelevant to construe the contracts, and the Purchasers have

---

[3] *In re Cohen,* 340 S.W.3d at 899, is factually distinguishable because there, plaintiffs were alleged co-owners who sought to set aside liens on and real property transfers based on allegations of fraudulent transfers. In *Long Beach Mtg. Co. v. Evans,* 284 S.W 3d 406, 414 (Tex. App. 2009), the court affirmed a lis pendens in a suit for constructive trust and title to real property arising from fraudulent transfers; *see also Walker v Walker*, No. 14-18-00569-CV, 2020 WL 1951631, at *1–2 (Tex. App. Apr. 23, 2020) (breach of oral agreement to convey house); *Tex. Kidney, Inc. v. ASD Specialty Hardware, 2014 Tex. App.*, No. 14–13–01106–CV, 2014 WL 3002425, at *8–9 (Tex. App. Jul. 1, 2014) (suit where fraudulent transfer established interest in real property).

produced no case law explaining why the lis pendens statute would authorize "extrinsic" evidence to recharacterize transactional documents that are self-referential and complete.[4]

For these reasons, consistent with Texas law, the lis pendens notices were void and should have been cancelled by the district court.

### 3. Mandamus Considerations

There remains an issue whether mandamus is a proper vehicle to require expunction of the lis pendens notices. We hold that it is. First, Texas law specifically authorizes cancellation of improper notices by means of mandamus. *In re Collins,* 172 S.W.3d at 297 ("It is well settled that mandamus is the appropriate remedy when issues arise concerning the propriety of a notice of lis pendens." (citations omitted)); *In re Cohen,* 340 S.W.3d at 900 (same). Were the federal court to disallow this important remedy as it is afforded in state court, we would deviate from the *Erie*-backed rule requiring federal court decisions to be modelled on applicable state law in diversity cases. Concomitantly, the federal courts would be used for forum shopping by those seeking to gain inappropriate leverage over opponents in ordinary contract-based lawsuits. And finally, state lis pendens law would be applied disparately and inequitably to parties depending on whether there was diversity of citizenship. Thus, although mandamus is an extraordinary remedy, it must be available in federal court to the same extent as in the courts of Texas.

Although petitioners have demonstrated a clear and indisputable right to the writ in this case, they must demonstrate that they have no other

---

[4] Aside from the testimony, the purchasers focus on a proposed "closing statement" from the title company, which purports to relate to a transfer of title. Taken in light of the transactional documentation as a whole, the closing statement is a summary of cost allocations, not itself a title document or evidence of direct real property title transfers to the purchasers.

adequate remedy at law and are otherwise entitled to its issuance. Notices of lis pendens constitute significant impediments to legitimate transfers of real property and may tie up realty for years during the pendency of litigation. As a result, Texas courts have generally held the petitioners had no adequate legal remedy where a lis pendens is invalid. *See In re Med Plus Equity*, No. 0-50-05-00404-CV, 2005 WL 1385238, at \*1–2 (Tex. App. Jun. 13, 2005); *First Nat'l. Petroleum Corp. v. Lloyd*, 908 S.W.2d 23, 24–25 (Tex. App. 1995); *Moss v. Tennant*, 722 S.W. 2d 762, 763 (Tex. App. 1986). We are constrained to follow the state courts' decisions.

Further, the consequences of misapplying the writ are exemplified here, where the notices have tied up a transaction valued at well over $300 million, prevented refinancing and inhibited completion of the underlying construction projects.

In sum, allowing the Purchasers to maintain the notices of lis pendens filed in this case was based on clear and indisputable errors of fact and law; the Sellers have no other adequate means of seeking redress than by issuance of this writ; and mandamus is "appropriate under the circumstances."

For the foregoing reasons, we **GRANT** the writ.

STEPHEN A. HIGGINSON, *Circuit Judge*, dissenting:

Section 12.007(a) of the Texas Property Code allows a litigant to file a notice of lis pendens "during the pendency of an action *involving* title to real property" (emphasis added). Interpreting this language, Texas courts draw a distinction between a party who claims a *direct* interest in real property and one who merely asserts a *collateral* interest. *See, e.g.*, *In re Collins*, 172 S.W.3d 287, 293 (Tex. App. 2005).

After a full day of evidence-taking, *a hearing requested by the Seller Petitioners*, the magistrate judge and district court found that the pleadings, documents, and testimony together created a question of fact regarding whether the Purchaser Respondents' underlying claim asserts a direct and present interest in real property. *See* Tex. Prop. Code § 12.007(a); *In re Collins*, 172 S.W.3d at 295.[1] Reviewing that same record, I see no clear or patent error. To the contrary, the testimony and documents extensively reviewed by those courts—as well as the underlying pleading, which asks the court to "close the transactions contemplated by the Agreements"—confirm that the property interests asserted would have a direct effect on the potential use of the subject property. *See In re Jamail*, 156 S.W.3d 104, 107 (Tex. App. 2004) ("[O]nly a party to the action *who is seeking affirmative relief* may file a lis pendens."); *see also* Rachel M. Kane et al., 1A

---

[1] When evaluating a motion to expunge a lis pendens, Texas courts may consider "oral testimony" and "any other proof" to determine the true nature of the litigation. Tex. Prop. Code § 12.0071(b)(1), (e). *See also In re Collins*, 172 S.W.3d at 295 ("If . . . a motion seeking the removal of a lis pendens challenges the existence of facts supporting the pleader's alleged interest in the property, the trial court should consider evidence relevant to the question of whether the alleged property interest is direct or collateral."). Legally, I find citation to non-lis pendens law about contract interpretation inapposite. And factually, the majority's candid acknowledgement that Hebron 6 was "purely . . . a real estate sale" highlights that this case has required five federal judges to attempt to discern, albeit disagreeingly, whether the transactions are ones involving real property interests.

Tex. Jur. Actions § 374 (3d ed. 2020) ("To be a sufficient property interest to support a filing of lis pendens, the property interest must be one that will be affected by the outcome of the litigation.").

As a result, I would deny the writ because I do not see that the district court reached a patently erroneous result when it denied the Seller Petitioners' motion to expunge lis pendens. Importantly, Texas law provides ample protection against a litigant's attempt to file a notice of lis pendens when the litigation has *no nexus* to owned property, s*ee, e.g.*, Tex. Prop. Code § 12.008, but our panel is not tasked with determining whether to impose or expunge a lis pendens. Our role on mandamus is an appropriately narrow one: identifying a proposition of fact or law that the district court *patently* lacked the authority to make. *See In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) ("[W]e require more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion."). To the extent that the Seller Petitioners rely on Texas state cases in which a writ of mandamus has been granted under allegedly similar circumstances, those cases used a considerably more lenient standard to evaluate a petition for a writ of mandamus. *Compare In re Med Plus Equity Invs., LP*, No. 0-50-05-00404-CV, 2005 WL 1385238, at *2 (Tex. App. 2005) (granting the writ after concluding that the trial court "abused its discretion"), *with In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) ("[W]e only will grant mandamus relief when [the district court's] errors produce a patently erroneous result."). Regardless, the two Texas cases which the Seller Petitioners offer and the majority finds to be persuasive for the proposition that Texas courts do *not* recognize lis pendens when property purchases occur through real estate companies owned by the parties in interest—*In re Med Plus*, 2005 WL 1385238, and *Mangione v. Jaffe*, 61 S.W.3d 591 (Tex. App. 2001)—are readily distinguishable and do not prove

that the district court reached a clearly erroneous result when it held that a question of fact existed with respect to the Purchaser Respondents' interest in the property. *See In re Med Plus*, 2005 WL 1385238, at *1 (holding that there was no direct interest in property where the limited partnership agreed to purchase property *after* the deal was complete); *Mangione*, 61 S.W.3d at 593 (pre-*Collins* case holding on the pleadings that there was no direct interest in property where the petition sought "full ownership of the partnership interests," rather than an interest in real property).

Without Texas caselaw that demonstrates the district court reached even an erroneous result—and no federal mandamus caselaw on this issue at all—I would deny the writ.