SHAFFER, APPELLANT, v. THE AKRON PRODUCTS CO., APPELLEE.

(No. 4225—Decided March 5, 1952.)

*Mr. Stanley Denlinger* and *Mr. Don Isham*, for appellant.

*Mr. John A. Weber*, *Mr. Harold L. Williams* and *Messrs. Brouse, McDowell, May, Bierce & Wortman*, for appellee.

HUNSICKER, P. J.  This is an appeal on questions of law from a judgment of the Common Pleas Court of Summit County, Ohio, which judgment such court directed for the defendant, The Akron Products Company (herein called "Company"), at the conclusion of all of the evidence and after both parties had rested their respective cases.

Paul Shaffer, the appellant (herein called "Shaffer"), seeks to recover on a promissory note, dated September 6, 1947, which note, in the amount of $5,554.55, was given to Shaffer in payment for a por-

tion of his salary as an officer and employee of the Company. The note represented the difference between his regular salary and an increase in salary which the Company agreed to pay him. A copy of such note is as follows:

"$5,554.55.　　　　Akron, Ohio, September 6, 1947.

"Fifteen months after date for value received ....promise to pay to the order of Paul Shaffer, Fifty-five hundred fifty-four and 55/100 dollars, with interest at the rate of 5% per centum per annum at Akron, Ohio, and we hereby authorize any attorney at law to appear in any Court of Record in the United States, after the above obligation becomes due, and waive the issuing and service of process and confess a judgment against......in favor of the holder hereof, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal.

　　　　　　　　"The Akron Products Company.
　　　　　　　　"Pres. T. J. Seibert.
　　　　　　　　"Sec'y C. J. Giegel."

At the same time that this note was given by the Company to Shaffer, a note for $5,600 was given by the Company to Thomas J. Seibert, an officer, director and stockholder, for his unpaid salary, and a note for $5,600 to L. A. McQueen, also an officer, director and stockholder, for unpaid salary due him. Shaffer was also a stockholder of, and vice-president in charge of sales in, the Company.

After such notes were given to Shaffer, Seibert and McQueen, the Company, being in need of additional working capital, sought to sell additional common stock to various friends of the officers. Seibert and McQueen then discussed with Shaffer an arrangement to release the Company from any liability on the notes which each held against the Company for

the unpaid salary claims, apparently for the purpose of creating a better financial condition of the Company.

Thereafter, Seibert, McQueen, and C. J. Giegel, the secretary of the Company, went to the home of Shaffer, and there Seibert and McQueen signed a typewritten instrument designated "Release." Shaffer also signed a similar typewritten instrument. Such instruments are as follows:

"Release

"I, Paul Shaffer, holding a note of Five Thousand, Five Hundred Fifty-four and 55/100 ($5,554.55) dated September 6, 1947, signed by the Akron Products Company, do hereby by agreement destroy such evidence of liability of the Akron Products Company, and further agree that no liability or claim shall ever be made against said company by me.

"C. J. Giegel,                                    Paul Shaffer.
"Witness.

- "Dated at Akron, Ohio, this 22nd day of December, 1947."

"Release

"We, L. A. McQueen and T. J. Seibert, each holding a note of Five Thousand Six Hundred Dollars ($5,600.00) dated September 6, 1947, signed by the Akron Products Company, do hereby by agreement destroy such evidence of liability of the Akron Products Company, and further agree that no liability or claim shall ever be made against said company by the above parties.

"Witnesses:

"C. J. Giegel.                                    L. A. McQueen.
"_____                                    T. J. Seibert.

"Dated at Akron, Ohio, this 23rd day of December, 1947."

Immediately after these instruments were signed

by the parties, McQueen and Seibert each handed to Mr. Giegel their respective notes, and Mr. Giegel tore up the notes and placed them in an ash tray in front of Shaffer. Shaffer stated that his note was in a lock box at his bank, and, because of ill health, he was not able to procure it, but that he would get it in a few days and give it to Mr. Giegel, so that it too could be destroyed.

Shaffer did not surrender his note, and, when his services with the Company were later terminated, brought suit on such note for the full amount with interest.

The trial court rendered judgment for the Company, and it is from such judgment that an appeal on questions of law is before this court.

The question which is determinative of this appeal is: Did Shaffer, by executing the "Release" set out above, renounce his rights against the Company within the terms of Section 8227, General Code?

Section 8227, General Code, reads as follows:

"The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

The Shaffer note was dated September 6, 1947, and was due and payable fifteen months after that date. The "Release" which Shaffer signed was executed by him on December 22, 1947; and hence, if a renunciation by Shaffer (the holder of such note) did take place, such renunciation occurred before the maturity

of the note and while Shaffer was still the holder of such note.

We find no cases in point in Ohio, but do find a collation of authorities that discusses Section 122 of the Uniform Negotiable Instruments Act (identical in terms with Section 8227 of the Ohio General Code). in .69 A. L. R., 846; 86 A. L. R., 334; 121 A. L. R., 1353; and Brannan's Negotiable Instruments Law (Sixth Ed.), Section 122.

When we examine Section 8227, General Code, we find that we are not dealing with the subjects of novation, accord and satisfaction, or a discharge of the note under the terms of Section 8224, General Code (Section 119 of the Negotiable Instruments Law). The problem we have before us is one of "reunciation," and such section is independent of Section 8224, General Code, relating to the discharge of a negotiable instrument. By "renunciation" is meant the gratuitous abandonment or giving up of a right; an express waiver without consideration. *English* v. *Evans,* 157 S. W. (2d), 793; *McGlynn* v. *Granstrom,* 169 Minn., 164, 210 N. W., 892.

See, also, 25 Michigan Law Review, 782; 9 University of Cincinnati Law Review, 90; 12 University of Cincinnati Law Review, 430.

"Undoubtedly the word 'renunciation,' as used in the section quoted, appropriately describes the act of surrendering a right or claim without recompense, but it can be applied with equal propriety to the relinquishment of a demand upon an agreement supported by a consideration." *Whitcomb* v. *National Exchange Bank of Baltimore,* 123 Md., 612, at p. 615, 91 A., 689.

Although many of the cases cited in Brannan's Negotiable Instruments Law, *supra,* differ in their interpretation of Section 119 of the Uniform Negotiable

Instruments Law (Section 8224, General Code of Ohio), and the requirement that such section be interpreted in conjunction with Section 122 (Section 8227, General Code of Ohio), all of the authorities agree that, where there is an express renunciation in writing of a claim evidenced by a note by the holder thereof, such instrument is discharged.

The transaction in the instant case upon which all of the parties agree is that Shaffer did execute the paper writing called a ''Release.'' By the terms of such ''Release,'' Shaffer agreed to destroy the note, and further agreed ''that no liability or claim shall ever be made against said company by me.''

This written release by Shaffer, an officer, employee and stockholder of the Company, was executed at the same time that similar releases were executed by two other principal stockholders and officers of the Company. Both of the releases were then given to the secretary of the Company, who was present at the signing of the releases and witnessed each signature.

We, therefore, find that Shaffer, by executing the written instrument dated December 22, 1947, and designated ''Release,'' did make an absolute and unconditional renunciation of his rights against the Company, which renunciation thereby discharged the note given to Shaffer on September 6, 1947, and no claim can now be made by Shaffer on such note.

We have examined all other claimed errors, and find none prejudicial to the substantial rights of the appellant.

*Judgment affirmed.*

Doyle and Stevens, JJ., concur.