### In re BEAVER OFFICE PRODUCTS, INC.

### BEAVER OFFICE PRODUCTS, INC., Plaintiff,

v.

### Jamille SIMON, Defendant.

### Bankruptcy No. 93–32819. Adv. No. 94–3025.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Aug. 11, 1995.

---

**5.** Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et. seq.,* shall be by section number only.

James Perlman, Toledo, Ohio, for Movant.

H. Buswell Roberts, Toledo, Ohio, for Jamille Simon.

## OPINION AND ORDER DENYING ADVERSARY COMPLAINT FOR TURNOVER

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon Beaver Office Products, Inc.'s (the "DIP") adversary complaint for turnover of funds against Jamille Simon ("Simon"). The DIP seeks to collect funds which Simon allegedly owes to the DIP pursuant to two promissory notes executed in 1992 (the "Notes"). Upon consideration of the evidence adduced at trial, the Court finds that the DIP's complaint is not well taken and should be denied.

### BACKGROUND

The DIP filed a petition under chapter 11 of title 11 on September 30, 1993.

The DIP sells, rents and services office machines in northwest Ohio. In addition, the DIP sells office supplies.

Synco, U.S.A. ("Synco"), the DIP's wholly owned subsidiary, also sells, rents and services office machines in northwest Ohio.

C.O.B.E.A., Inc. ("COBEA") owns 100% of the DIP's stock. John Elgin ("Elgin") and Horst Lorenz ("Lorenz") own COBEA's stock. Lorenz serves as president of the DIP and secretary and vice-president of Synco.

Simon formerly owned Data Systems/Synco ("DSS"), an Ohio corporation.

### FACTS

The DIP presented the testimony of Lorenz and Gary Lilje ("Lilje"), Synco's controller. Simon testified in opposition to the DIP's motion.

Simon acknowledges that he received funds from the DIP as set forth in the Notes and that he never satisfied the Notes. However, contrary to the DIP's position, Simon testified that the parties never intended for him to repay the Notes. Further, Simon testified that the DIP discharged his obligations under the Notes in the Spring of 1992.

Simon testified that DSS, his former business, purchased office machines and office supplies from the DIP. Simon testified that he developed great respect for Lorenz' "financial ability" based on his business relationship with Lorenz and the DIP.

Additionally, Simon testified that he and Lorenz were personal friends.

After DSS began experiencing financial difficulties in August of 1991, Simon sought Lorenz' assistance in effecting a "workout" of DSS' debt to ITT, one of DSS' major credi-

tors. Simon testified that Lorenz assisted him in developing a proposed "workout" plan. Lorenz also participated in meetings between Simon and ITT. Despite the efforts of Simon and Lorenz, ITT rejected the proposed "workout" plan.

Upon ITT's rejection of Simon's proposed "workout" plan, Simon transferred DSS' customer lists, employee files and computer records to the DIP in early 1992. Simon further testified that he assisted the DIP in obtaining the services of former DSS employees. Consistent with Simon's testimony, Lilje testified that substantially all of the former employees of DSS became employees of the DIP in January, 1992.

On February 7, 1992, Simon leased the building which he owned at 3150 Bellevue, which building was formerly occupied by DSS, to the DIP. Thereafter, Simon assigned the Lease to his ex-wife Janie Simon pursuant to a divorce decree.

Subsequently, in April of 1992, Simon executed the Notes in favor of the DIP for $77,000.00 and $45,000.00, respectively. *See* Plaintiff's Exhibit A, Exhibit B. According to Simon, the DIP transferred funds to him in order to meet the payroll obligations of DSS for January of 1991 because Elgin and Lorenz feared that the DIP would be viewed as a successor-in-interest to DSS.

Simon testified that the parties never intended for him to repay the Notes. Rather, Simon testified that he executed the Notes at Lorenz' request based on Lorenz' assurance that the DIP would subsequently release him from liability on the Notes.

Simon testified that, shortly after he executed the Notes, the DIP discharged his obligations under the Notes when Lorenz signed a document stating that the DIP was forgiving "any and all obligations of [DSS] or Jamille Simon" (the "Release"). *See* Defendant's Exhibit 1.

In contrast to Simon's testimony, Lorenz testified that he never discussed forgiveness of the Notes with Simon and that he did not recall signing the Release.

Although the DIP listed the Notes as an asset on its balance sheets for January and February of 1992, the DIP did not list the Notes as an asset on balance sheets subsequent to February, 1992. Lorenz testified that he had no knowledge as to why the DIP's financial statements made no reference to the Notes as an asset of the DIP. Lilje testified that the DIP wrote-off the Notes as a bad debt.

## *DISCUSSION*
### APPLICABLE STATUTE

Former Ohio Revised Code § 1303.71(A), applicable to the DIP's alleged release of the Notes in 1992, provides that:

> [t]he holder of an instrument may even without consideration discharge any party:
>
> ... (2) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

Ohio Rev.Code Ann. § 1303.71 (Anderson 1979).

### BURDEN OF PROOF

■ Simon bears the burden of proof in establishing that the Notes have been discharged. *Hubbard Realty Co. v. First Nat'l Bank of Pikeville*, 704 F.2d 733, 736 (4th Cir.1983).

### WHETHER THE DIP DISCHARGED SIMON'S OBLIGATIONS UNDER THE NOTES BY EXECUTING THE RELEASE

■ The specific language of the Release along with Simon's testimony has convinced the Court that the DIP, acting through its president Lorenz, discharged Simon's obligations under the Notes by executing the Release. *See Winters v. Sami*, 462 So.2d 521, 522 (Fla.Dist.Ct.App.1985) (finding renunciation of future right to receive mortgage payments under analogous Florida statute where mortgagees executed memorandum stating that they " 'ha[d] agreed to omit' " monthly mortgage payments due from mortgagor), *review den'd,* 475 So.2d 696 (Fla. 1985); *see also Shaffer v. Akron Products Co.*, 91 Ohio App. 535, 109 N.E.2d 24, 25–27 (1952) (finding renunciation of holder's rights against maker under former Ohio General Code § 8227 where document executed by

holder indicated that holder would destroy note and make no claim against maker); *cf. Kinney v. Columbus Temperature Control Co.,* 2 Ohio App.3d 396, 442 N.E.2d 465, 467–68 (1981) (finding that holder's conduct in surrendering note to maker's president constituted a renunciation of rights under promissory note). Moreover, the Court finds that the DIP's release of its rights under the Notes was intentional and did not result from fraud or mistake. The absence of any reference to the Notes in the DIP's financial statements subsequent to February, 1992 further supports Simon's position that the DIP discharged Simon's obligations on the Notes.

In light of the foregoing, it is therefore

ORDERED that the DIP's adversary complaint for turnover be, and it hereby is, denied and dismissed with prejudice.