**Opinion and Dissenting Opinion of November 20, 2012 Withdrawn and Judgment Vacated; Appellee's Amended Motion for Rehearing Granted in Part and Denied in Part; Appellant's Motion for Rehearing Denied as Moot; Petition Denied; Affirmed in Part; Reversed in Part; Remanded; and Opinion and Dissenting Opinion on Rehearing filed May 16, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-01125-CV

---

## NATIONAL CITY BANK OF INDIANA AND NATIONAL CITY HOME LOAN SERVICES, INC., Appellants/Cross-Appellees

### V.

### ALBERT ORTIZ, Appellee/Cross-Appellant

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2006-61178**

---

### NO. 14-10-01262-CV

---

### IN RE ALBERT ORTIZ, Relator

---

### ORIGINAL PROCEEDING

---

# D I S S E N T I N G   O P I N I O N   O N   R E H E A R I N G [1]

I respectfully dissent.

## APPEAL

The main issue in this case is whether there is more than one reasonable interpretation of two letters signed on behalf of National City Bank of Indiana (the "Bank") by National City Home Loan Services, Inc. (the "Servicer"), at the request of one of the Bank's borrowers, Albert Ortiz. There is only one, and it is this: without receiving any consideration, the Bank expressly waived all of its rights against Ortiz under the promissory note dated March 15, 2004 ("Note"). Because of this unambiguous waiver, the Bank is not entitled to recover under the Note. For this reason, this court should affirm the trial court's partial take-nothing summary judgment in favor of Ortiz on claims arising from the Note.

The majority errs by concluding that the letters are ambiguous. As explained below, there is nothing unclear or uncertain about the waiver language or its effect. Under a straightforward application of Texas law, the letters mean precisely what they say. Though the Bank and the Servicer (collectively, the "Bank Parties") assert that they did not intend to waive all the claims under the Note, the words they used could hardly be clearer. The Bank may have acted imprudently in renouncing its rights under the Note without obtaining its own release or waiver from Ortiz but imprudent acts have consequences under the law. The Bank stated that it "releases and *waives . . . all . . . claims* regarding *any obligations or*

---

[1] The dissenting opinion of November 20, 2012, is withdrawn, and this dissenting opinion on rehearing is issued in its place.

*liabilities* of [Ortiz] in connection with the above-referenced property, *including the note* and deed of trust associated with such property."[2]  The legal consequence of this act is a renunciation of the Bank's claims under the Note.  This is the only reasonable interpretation of the language. Instead of holding the Bank to its unambiguous words, the majority finds an ambiguity where none exists and remands this case for a new trial.

Today's decision is bad for borrowers and bad for lenders.  By stretching and straining to find that the unambiguous waiver language is ambiguous, the majority not only contravenes the directives of the Supreme Court of Texas but also creates bad precedent from this court that will make it more difficult for courts in this jurisdiction to find any waiver language unambiguous.

### *Unwelcome Consequences of Today's Decision*

Parties count on waivers and releases to bring an immediate and final end to claims and disputes.  An unambiguous waiver or release of claims serves a crucial purpose in our economy.  By giving and receiving waivers or releases, parties can avoid the time, expense, and distraction of protracted litigation *if* the waiver or release is unambiguous.

The ambiguous/unambiguous distinction is significant.   Unambiguous provisions can be enforced by summary judgment; ambiguous ones usually cannot. Often, parties will not settle disputes if there is no reasonable expectation that courts will enforce a waiver of rights without putting them to the inconvenience, expense, and uncertainty of a full-blown trial.  Because the waiver language at issue in today's case is commonly used to settle claims, today's holding that this language is ambiguous jeopardizes summary judgment as a viable option in future cases.  Quite simply, by refusing to hold the Bank to its unambiguous waiver, the

---

[2] (emphasis added).

majority reaches the wrong result in this case and devalues all unambiguous waiver language. This time it is the Bank trying to avoid its unambiguous waiver of claims against the borrower; next time, it may be a borrower who seeks to avoid the unambiguous waiver of lender-liability claims against a bank.

Simple issues previously resolved at the summary-judgment stage may have to be determined through trials to fix the meaning of documents that should be declared clear and unambiguous as a matter of law. Borrowers who have been released from debt obligations face uncertainty because what they reasonably believed was an unambiguous renunciation of debt claims now holds only the hope of enforcement at the end of protracted and costly litigation. Likewise, lenders and other parties holding releases from borrowers may end up paying twice for the same waiver or release just to avoid the time, expense, and uncertainty of full-scale trials they already bargained to escape.

Unambiguous waivers and releases are valued precisely because of the expectation that courts will enforce them as written in response to a properly filed and presented summary-judgment motion. When courts fail to do so, parties' legitimate expectations are frustrated, and the law becomes uncertain and unpredictable. Predictability is especially important in this area of the law because it enables parties to evaluate the strength of a proposed written waiver or release and the likely outcome should its enforceability become an issue in court. Knowing how a court interprets standard waiver and release language is critical to the settlement decision. When parties can trust courts to enforce unambiguous waivers and releases, they will engage in settlement transactions. Without that assurance, more often they will not. The citizens of this state are best served by a jurisprudence that will foster predictability by holding parties to their written word. Today's decision undermines this objective.

*Disposition Under a Plain-Meaning Analysis*

Application of longstanding Texas law demonstrates that the waiver language at issue in today's case is susceptible to only one reasonable interpretation.  For this reason, the Bank's claims under the Note fail as a matter of law.

**The trial court granted summary judgment as to the Bank Parties' claims under the Note, concluding that these claims were waived or released under section 3.604 of the Texas Business and Commerce Code.**

The trial court granted partial summary judgment in Ortiz's favor, ordering that the Bank Parties take nothing on any claim arising from the Note.  The trial court based this summary-judgment ruling upon its conclusion that the claims under the Note were waived or released under section 3.604 of the Texas Business and Commerce Code.[3]  This statute, entitled "Discharge by Cancellation or Renunciation," provides in pertinent part:

> (a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:
>
> (1) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge; or
>
> (2) by agreeing not to sue or otherwise renouncing rights against the party by a signed record.[4]

Discharge by written renunciation, the type of waiver addressed in section

---

[3] Unless otherwise stated, all statutory citations in this opinion are to the Texas Business and Commerce Code.

[4] Tex. Bus. & Comm. Code Ann. § 3.604(a) (West 2013).

3.604(a)(2), has a long pedigree stretching back many years.[5] It was imported into the law merchant from French law, and then the British Parliament adopted it into English law from the law merchant in the Bills of Exchange Act of 1882.[6] Though discharge by written renunciation was generally not adopted into American common law, the drafters of the American Uniform Negotiable Instruments Act incorporated it from English law into section 122 of that act, which was eventually enacted in all American states. *See Hall*, 254 S.W. at 1038–39; *Bagley*, 112 P.2d at 465–66. This provision was the basis for the part of the Uniform Commercial Code currently found in section 3.604(a). Despite this core principle having been the law of all American states for many years, there are not many cases addressing discharge by written renunciation.[7] The parties have not cited and research has not revealed any case in which a court has construed section 3.604(a)(2). But, there is ample Texas jurisprudence on the law of waiver; renunciation is a species of waiver.

This court reviews the trial court's interpretation of applicable statutes de novo.[8] In interpreting a statute, this court's objective is to determine and give effect to the Legislature's intent.[9] If possible, this court must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state.[10] If the meaning of the statutory language is unambiguous, the court is to adopt the interpretation supported by the

---

[5] *See Hall v. Wichita State Bank & Trust Co.*, 254 S.W. 1036, 1037–39 (Tex. Civ. App.—Amarillo 1923, writ refused); *Bagley v. Kerr*, 112 P.2d 459, 464–66 (Or. 1941).

[6] *See Hall*, 254 S.W. at 1038.

[7] *See Hall*, 254 S.W. at 1037–39; *Shaffer v. Akron Products Co.*, 109 N.E.2d 24, 26 (Ohio Ct. App. 1952); *Bagley*, 112 P.2d at 464–66.

[8] *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989).

[9] *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000).

[10] *Id*.

plain meaning of the provision's words.[11] This court must yield to the plain sense of the words the Legislature chose.[12]

Section 3.604(a)(2) is unambiguous. In this section the Legislature provides that a person (which includes a bank) entitled to enforce a negotiable instrument may unilaterally and without consideration discharge the obligation of a party to pay the instrument by agreeing in writing not to sue the party or by expressly renouncing or waiving the person's rights against the party in a writing signed by the person.[13] That is precisely what we have in this case.

**The Bank unambiguously waived its rights under the Note by written renunciation, and the majority errs in concluding that the Letters are ambiguous.**

An employee of the Servicer signed one letter on June 27, 2006 ("First Letter"), and a second letter on July 6, 2006 ("Second Letter"). The summary-judgment evidence contains the First Letter and the Second Letter (collectively, the "Letters"), both of which are signed writings. The First Letter states, in pertinent part:

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A in connection with its foreclosure on the above-referenced property. As a result, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and

---

[11] *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).

[12] *See id.*

[13] *See* Tex. Bus. & Comm. Code Ann.§ 3.604(a). *See also Hall*, 254 S.W. at 1039 (stating that "'a written renunciation or discharge of a bill or note or of the liability of any party thereon is now good without consideration'") (quoting WILLISTON ON CONTRACTS); *Shaffer*, 109 N.E.2d at 26 (stating that "[b]y 'renunciation' is meant the gratuitous abandonment or giving up of a right; and express waiver without consideration").

7

> Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender.

Under this unambiguous language, the agent who signed the First Letter did not sign it on behalf of the Bank. Nonetheless, as discussed below, under the unambiguous language of the Second Letter, the agent who signed that writing signed it on behalf of the Bank and, in the Second Letter, the Bank agreed to all of the terms of the First Letter. The majority concedes that, at a minimum, the Second Letter makes all the terms of the First Letter applicable to the Bank.

In the text of the First Letter, the Bank[14] stated that, as a result of its foreclosure on the real property that was the subject of the deed of trust (the "Property"), the Bank did not intend to and would not "file or pursue any lawsuit or other legal proceeding against [Ortiz] for any deficiency *or otherwise*."[15] (emphasis added). The majority concludes that it is reasonable to construe this text as waiving only the Bank's claim against Ortiz for the deficiency remaining after the foreclosure sale.[16] But the words that follow "deficiency" cannot be treated as though they are invisible; the Bank stated that it would not file or pursue any lawsuit or legal proceeding against Ortiz "for any deficiency or otherwise." This language is plainly cast in the disjunctive and "or otherwise" plainly entails more than "any deficiency."

To give effect to the "or otherwise" language, one must interpret the Bank's

---

[14] For ease of reference, in discussing the First Letter, the "Lender" is referred to as the Bank, even though the Bank did not become bound by the terms of the First Letter until an agent of the Bank signed the Second Letter.

[15] According to the majority, in the First Letter the Bank "agreed that 'as a result' of the foreclosure, it would not pursue 'further' sums from Ortiz." *Ante* at p. 20. This statement is not accurate.

[16] *See ante* at p. 20.

8

waiver to include its deficiency claim as well as all other claims against Ortiz regarding the Note and the Property. The majority asserts that it is reasonable to construe this language as waiving only the Bank's deficiency claim. But such a construction renders the words "or otherwise" meaningless; therefore, this construction is unreasonable.[17] A faithful interpretation under Texas law cannot render part of the document meaningless.

Because the "as a result" phrase refers to the foreclosure sale, the majority concludes that it is reasonable to construe this sentence as waiving only the Bank's claim against Ortiz for the deficiency remaining after the foreclosure sale.[18] The majority finds ambiguity because of a perceived conflict between "broad and sweeping" language in the First Letter and other language in the letter referring to the foreclosure sale.[19] But the specific reference to the foreclosure sale does not make it reasonable to construe "for any deficiency or otherwise" to mean "for any deficiency."[20] The additional words the majority ignores add meaning. They are

---

[17] *See Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (concluding contract interpretation was not reasonable because it would render part of the contract meaningless); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 160 (Tex. 2003) (rejecting a contract construction as unreasonable because it was inconsistent with language in the contract that was clearly disjunctive); *Virginia Power Energy Marketing, Inc. v. Apache Corp.*, 297 S.W.3d 397, 403 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (rejecting contract interpretation that would render part of the contract meaningless); *Coastal Terminal Operators v. Essex Crane Rental Corp.*, No. 14-02-00627-CV, 2004 WL 1795355, at *6 (Tex. App.—Houston [14th Dist.] Aug. 12, 2004, pet. denied) (concluding contract interpretation was not reasonable because it would render part of the contract meaningless) (mem. op.).

[18] *See ante* at pp. 19–20.

[19] *See id.*

[20] *See Memorial Medical Center of East Texas v. Keszler*, 943 S.W.2d 433, 434–35 (Tex. 1997) (interpreting two documents that constituted a single agreement and concluding that, even though the release given by releasor in one part of the agreement was clearly narrower than the release given by releaser in another part of the agreement, the court would still give effect as a matter of law to the unambiguous, broader language); *Sterling Equities, Inc. v. Chubb Custom Ins. Co.*, 806 F. Supp. 2d 1004, 1007–1010 (S.D. Tex. 2011) (applying Texas law and holding that broad language of release unambiguously covered one of the insured's properties, even

an integral part of the operative language. It is not reasonable or proper to disregard these words in construing the First Letter.

In the next sentence of the First Letter, the Bank waives "any and all demands and claims" regarding "any and all obligations and liability that [Ortiz] may have *or may have had* to [the Bank]."[21] Again, the majority concludes it is reasonable to construe the text of the First Letter as waiving only Ortiz's obligations and liability under the then-existing deficiency claim. This construction makes the words "or may have had" meaningless; therefore, this construction is unreasonable.[22] The words "or may have had" add meaning, and it is not reasonable or proper to ignore these words in construing the text of the First Letter.

The majority relies upon the word "further" in the following sentence in the First Letter: "It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender." This language follows a sentence in which the Bank waives any and all claims regarding Ortiz's past or present obligations and liabilities. In this context, the First Letter describes the Bank's waiver as applying to all claims regarding all of Ortiz's past or present obligations and liability, and then the letter states that no further obligations will accrue or be pursued by the Bank. Even presuming that this sentence is limited to claims regarding further obligations and liability, it is not reasonable to construe this sentence as limiting the waiver in the entire letter to such obligations and liability.

---

though that property was not specifically mentioned at all in the release and even though three other properties were specifically mentioned as being the subject of the release).

[21] (emphasis added).

[22] *See Gilbert Texas Construction, L.P.*, 327 S.W.3d at 133; *Virginia Power Energy Marketing, Inc.*, 297 S.W.3d at 403; *Coastal Terminal Operators*, 2004 WL 1795355, at *6.

10

In determining whether the First Letter is ambiguous, the majority relies upon the summary-judgment standard of review, drawing all inferences in favor of the Bank Parties because they were non-movants.[23] But, whether the First Letter is ambiguous is a question of law that this court is supposed to determine de novo.[24] Therefore, the majority does not apply the correct standard of review in reaching its answer.[25] An analysis under the proper standard yields the opposite result.

The majority attaches significance to the fact that the First Letter contains a reference to the IRS Form 1099-A that the Bank planned to file regarding the June 6, 2006 foreclosure sale. The First Letter contains a confirmation that the Bank has completed and will file this form. But the filing of this form does not speak to whether the Bank waives any or all of its rights against Ortiz under the Note.

Under the unambiguous language of the First Letter, the Bank waived any and all claims it had against Ortiz regarding any obligations or liabilities under the Note and renounced in a signed writing the Bank's rights against Ortiz under the Note.[26] As a matter of law, under the plain language of the First Letter, the Bank

---

[23] *See ante* at p. 20.

[24] *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008); *Avenell v. Chrisman Properties, L.L.C.*, No. 14-08-01180-CV, 2010 WL 1379972, at *2 (Tex. App.—Houston [14th Dist.] Apr. 8, 2010, no pet.) (mem. op.).

[25] *See Bowden*, 247 S.W.3d at 705; *Avenell*, 2010 WL 1379972, at *2.

[26] *See* Tex. Bus. & Comm. Code Ann. § 3.604(a); *Thompson v. Kerr*, No. 14-08-00978-CV, 2010 WL 2361636, at *4 (Tex. App.—Houston [14th Dist.] June 15, 2010, no pet.) (holding trial court properly granted summary judgment because, in a settlement agreement, plaintiffs unambiguously manifested an intent to waive their rights against the defendant) (mem. op.); *Tran v. Compass Bank*, No. 02-11-00189-CV, 2012 WL 117859, at *1–2 (Tex. App.—Fort Worth Jan. 12, 2012, no pet.) (holding that, under broad and unambiguous provision of guaranty agreement, guarantor waived as a matter of law statutory right to offset against a deficiency owed following foreclosure on deed-of-trust lien) (mem. op.); *ASI Technologies, Inc. v. Johnson Equipment Co.*, 75 S.W.3d 545, 547–49 (Tex. App.—San Antonio 2002, pet. denied) (holding that, under unambiguous language of settlement agreement, party waived its statutory indemnity rights as a matter of law); *Shaffer*, 109 N.E.2d at 26 (stating that "all of the authorities agree that, where there is an express renunciation in writing of a claim evidenced by a note by the holder

11

waived and renounced all claims and demands against Ortiz based upon the Note. Hence, the summary-judgment evidence proved as a matter of law the Bank's waiver of its rights under the Note based upon the First Letter.

In pertinent part, the Second Letter contains the following language:

> Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.[27]

> Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006, letter agreement also apply to [the Bank], as the Lender, and that [the Bank] also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

Under this unambiguous text, the Bank confirmed that all of the terms and conditions of the First Letter applied to the Bank. As discussed above, under these terms and conditions, the Bank unambiguously waived any and all claims it had against Ortiz regarding any obligations or liabilities arising from the Note. Under the unambiguous conjunctive language of the Second Letter, the Bank also confirmed that it released and waived any and all demands and claims regarding any obligations or liabilities of Ortiz, in connection with the Property, including the Note and the deed of trust securing payment of the Note (the "Deed of Trust").

---

thereof, such instrument is discharged" and holding that writing signed by holder of note discharged the note by written renunciation); *Bagley*, 112 P.2d at 466 (holding that signed writing by holder of promissory note discharged the note by written renunciation).

[27] In the first letter, the "Lender" was incorrectly identified as "First Franklin Financial Corporation/National City Home Loan Services, Inc."

The majority concludes that it is reasonable to construe the text of the Second Letter as only confirming that the Bank is bound by the First Letter.[28] But this construction renders the word "and" meaningless; so, this construction is unreasonable.[29]

Under the only reasonable construction of the Second Letter, the Bank confirmed two things: "that all of the terms and conditions of the [First Letter] also apply to [the Bank], as the Lender, *and* that [the Bank] also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of [Ortiz], in connection with the [Property], including the [Note] and [Deed of Trust]."[30] By each of these confirmations, the Bank unambiguously agreed not to sue Ortiz regarding any obligations or liabilities under the Note and renounced in a signed writing all of the Bank's rights against Ortiz under the Note.[31] The majority's interpretation is not reasonable under Texas law.[32]

In support of its conclusion that it is reasonable to construe the Second Letter as only confirming that the Bank is bound by the First Letter, the majority relies upon the words "out of an abundance of caution" and "confirm." But these words do not make it reasonable to interpret the Second Letter as confirming one

---

[28] *See ante* at p. 21.

[29] *See Gilbert Texas Construction, L.P.*, 327 S.W.3d at 133; *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 160; *Virginia Power Energy Marketing, Inc.*, 297 S.W.3d at 403; *Coastal Terminal Operators*, 2004 WL 1795355, at *6.

[30] (emphasis added).

[31] *See* Tex. Bus. & Comm. Code Ann. § 3.604(a); *Thompson*, 2010 WL 2361636, at *4; *Tran*, 2012 WL 117859, at *1–2; *ASI Technologies, Inc.*, 75 S.W.3d at 547–49; *Shaffer*, 109 N.E.2d at 26; *Bagley*, 112 P.2d at 466.

[32] Even presuming for the sake of argument that the First Letter is ambiguous as to whether the Bank waived all of its rights against Ortiz under the Note, this second confirmation still would constitute an unambiguous renunciation and waiver by the Bank in a signed writing of the Bank's rights against Ortiz under the Note.

matter as opposed to two matters. Ortiz's lawyer identified an issue at the beginning of the Second Letter—the Servicer had signed the First Letter on behalf of the wrong lender. Though addressing this mistake in the First Letter was clearly a purpose of the Second Letter, the existence of this purpose does not mean that the Bank cannot confirm two matters under the unambiguous language of the Second Letter.[33] As a matter of law, under the plain language of the Second Letter, the Bank waived and renounced all claims and demands against Ortiz based upon the Note.[34] Therefore, the summary-judgment evidence proved as a matter of law the Bank's waiver of its rights under the Note based upon the Second Letter.[35]

The trial court did not err in concluding that, under section 3.604(a), in the Letters, the Bank unambiguously waived its rights against Ortiz under the Note, without any consideration.[36] Because the Bank expressly waived its rights against Ortiz under the Note in both the First Letter and the Second Letter, the Bank

---

[33] *See Memorial Medical Center of East Texas*, 943 S.W.2d at 434–35 (construing two documents that constituted a single agreement and concluding that, even though the release given by releasor in one part of the agreement was clearly narrower than the release given by releaser in another part of the agreement, the court would still give effect as a matter of law to the unambiguous, broader language); *Sterling Equities, Inc.*, 806 F. Supp. 2d at 1007–1010 (applying Texas law and holding that broad language of release unambiguously covered one of the insured's properties, even though that property was not specifically mentioned at all in the release and even though three other properties were specifically mentioned as being the subject of the release).

[34] The Bank Parties also argue that intent is a fact issue for the jury and not a proper subject of a summary judgment. But, this court has held that a court should find waiver when, as in this case, a party unequivocally manifests an intent to no longer assert its rights and that a trial court may grant summary judgment if such a waiver is proved by the language of an unambiguous writing. *See Thompson*, 2010 WL 2361636, at *4.

[35] The Bank Parties cite three cases that they assert support their position; but these cases are not on point because they all involve the alleged discharge of a negotiable instrument based upon conduct described in section 3.604(a)(1) rather than under section 3.604(a)(2).

[36] *See* Tex. Bus. & Comm. Code Ann. § 3.604(a); *Thompson*, 2010 WL 2361636, at *4; *Tran*, 2012 WL 117859, at *1–2; *ASI Technologies, Inc.*, 75 S.W.3d at 547–49; *Shaffer*, 109 N.E.2d at 26; *Bagley*, 112 P.2d at 466.

Parties were not entitled to recover on the Note.[37]  And, because there is only one reasonable interpretation of the Letters, this court should enforce these documents as written.[38]

This court should not disregard key words in the Letters or question the wisdom of the Bank's execution of them, nor should this court rewrite the provisions of the Letters under the guise of interpretation.[39]  Sometimes parties—even sophisticated ones like banks—sign unambiguous documents that they later regret having signed.  When that happens, the answer is not to make clear things cloudy or to strain to find fact issues that will spoil a summary judgment and thereby give the hope of a different outcome in a jury trial.  It is this court's duty to enforce clear waiver language as written.  Doing so not only honors the parties' intentions as expressed in unambiguous writings but, even more importantly, it strengthens crucial rule-of-law values that are so vital to the health of our system of justice.

The Bank unequivocally waived its claims under the Note and it should be held to its waiver.  This court should affirm the trial court's June 2010 partial summary judgment that the Bank Parties take nothing on any claim arising from the Note (the "Partial Summary Judgment").

**The trial court did not err in impliedly granting the borrower's motion to disregard the jury's finding in response to Question 6.**

The Bank Parties also argue that the trial court erred by impliedly granting Ortiz's motion to disregard the jury's finding in response to Question 6.  In this

---

[37] The majority relies upon *Burton v. National Bank of Commerce of Dallas*, 679 S.W.2d 115 (Tex. App.—Dallas 1984, no writ).  *See ante* at p. 26.  In *Burton*, the waiver was based upon oral statements, not upon any writing, as in the case under review.  *See Burton*, 679 S.W.2d at 116–18.  The *Burton* case is not on point.

[38] *See Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 646 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[39] *See id.*

finding the jury answered "no" to the following question, which was submitted without any accompanying instructions:

> With respect to the Letter Agreements, did [the Servicer] or [the Bank] validly agree that Albert Ortiz would receive ownership and possession of the [Property] without obligation for further payments on the Note, and that [the Servicer] and [the Bank] would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?

A trial court may disregard a jury finding if it is unsupported by evidence or if the question is immaterial.[40] A question is immaterial when it should not have been submitted, when it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings.[41]

The trial court submitted Question 6 over Ortiz's objection that this question does not track the wording of the Letters. Ortiz's counsel pointed out that the Letters were signed after the foreclosure sale and before the trial court set it aside. Ortiz objected to the language about Ortiz receiving ownership and possession of the Property because the Letters contain no such language. Ortiz's objections were valid. The Letters were signed within one month of the foreclosure sale and more than two years before the trial court granted summary judgment on Ortiz's wrongful-foreclosure claim, set aside the trustee's deed, and restored title in the Property to Ortiz. Significantly, when the Letters were signed, the Bank held title to the Property, and the Letters do not mention any agreement that Ortiz would receive ownership and possession of the Property. The Letters address an express

---

[40] *See Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex. 1994).

[41] *Id.*

waiver of the Bank's rights under the Note and Deed of Trust, but they do not purport to memorialize an agreement that Ortiz would receive ownership and possession. Neither Ortiz nor the Bank Parties asserted that the Letters were an agreement to convey ownership and possession of the Property to Ortiz. Title and right to possession of the Property were conveyed to Ortiz when the trial court ruled in his favor on his wrongful-foreclosure claim, and the Bank Parties have not challenged this trial court ruling on appeal.

In addition, in Question 6, the trial court asked the jury to determine whether the Letters contain a "valid" agreement between Ortiz and the Bank or the Servicer. This question calls for a jury finding as to a question of law, which is beyond the province of the jury.[42] For this additional reason, the question was immaterial.

In sum, Question 6 was immaterial both because it should not have been submitted and because it calls for a legal determination.[43] The trial court did not err by impliedly granting Ortiz's motion to disregard the jury's finding in response to this question.[44]

**The trial court did not seek "to partially correct" an error in the Partial Summary Judgment by submitting Question 6 to the jury.**

According to the majority, after granting the Partial Summary Judgment based upon the conclusion that the Letters were unambiguous, the trial court (1) realized it had erred in reaching this conclusion, (2) set aside the Partial Summary

---

[42] *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n.9 (Tex. 2008) (noting that the determination of an agreement's validity is a legal question); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (same); *In re Guggenheim Corporate Funding, LLC*, 380 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (same).

[43] *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 787 (Tex. 2008); *National Plan Adm'rs v. National Health Ins. Co.*, 235 S.W.3d 695, 703–04 (Tex. 2007).

[44] *See Ulico Cas. Co.*, 262 S.W.3d at 787; *National Plan Adm'rs*, 235 S.W.3d at 703–04.

Judgment, (3) sought to "partially correct this error" by submitting Question 6 to the jury, and (4) changed its ruling yet again after trial by reinstating the Partial Summary Judgment in the final judgment.[45] No oral or written rulings or actions of the trial court support any such findings.

The record does not reflect that the trial court set aside or vacated the Partial Summary Judgment. Nor does the record reflect that the trial court determined it had erred in granting the Partial Summary Judgment or that the trial court sought to "partially correct this error" by submitting Question 6 to the jury. Nor does the record show that the trial court reinstated its Partial Summary Judgment. The unambiguous language of the Partial Summary Judgment and of the trial court's final judgment, and a careful review of the entire record, show that the trial court never set aside or modified the Partial Summary Judgment. Instead, the trial court incorporated the Partial Summary Judgment unchanged into the final judgment, without having ever set aside the Partial Summary Judgment.

The majority infers that the trial court took these purported actions based upon the majority's conclusion that the trial court submitted the interpretation of the Letters to the jury in Question 6.[46] The majority cites a case for the proposition that a trial court's ruling that the interpretation of a contract should be submitted to the jury is an implicit holding that the contract is ambiguous.[47] But, notably, the trial court did not submit the interpretation of the Letters to the jury in Question 6. Indeed, the trial court did not instruct the jury that it was the jury's duty to interpret any part of the Letters. Nor did the trial court instruct the jury to decide the meaning of the Letters by determining the mutual intent of Ortiz and the Bank

---

[45] *See ante* at pp. 22–24.

[46] *See id.*

[47] *See id.* (citing *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008)).

18

Parties when the Letters were signed. Instead, the trial court asked the jury whether the parties validly entered into an agreement that no party asserted had been made and of which there was no evidence.[48] Unsurprisingly, the jury did not find that the parties had validly entered into this agreement. The trial court did not submit the interpretation of the Letters to the jury in Question 6. Therefore, the premise underlying the majority's conclusion is fundamentally flawed. The trial court did not set aside the Partial Summary Judgment, nor did the trial court try to "partially correct" any alleged error in the Partial Summary Judgment by submitting Question 6 to the jury.

**The trial court granted summary judgment based upon a ground expressly stated in Ortiz's summary-judgment motion.**

Under their first issue, the Bank Parties argue that, in response to the Bank Parties' assertion that the Letters were not supported by consideration, the only issue Ortiz properly raised was that the Letters did not require consideration because the Letters are waivers. The Bank Parties assert that the trial court erred by granting partial summary judgment in Ortiz's favor based upon section 3.604, which the Bank Parties assert is a ground not stated in Ortiz's summary-judgment motion.

The Bank Parties are correct that Ortiz did not cite section 3.604 in his summary-judgment motion or response to the Bank Parties' motion. Ortiz's counsel first cited this statute to the trial court during oral argument on the summary-judgment motion, and then addressed section 3.604 further in supplemental briefing to the trial court. This court cannot affirm a summary

---

[48] The majority states that, in response to Question 6, "the jury found that in executing the Letter Agreements, the Bank Parties did not agree to release Ortiz from any further obligation to make payments on the Note if he received ownership and possession of the [Property]." *Ante* at p. 23. This statement is inaccurate because this is not the finding that the jury was asked to make in Question 6.

judgment on a ground not stated in the summary-judgment motion.[49] But, in evaluating what grounds were raised in a summary-judgment motion, courts recognize that summary-judgment grounds may be stated concisely, without detail and argument.[50] Thus, as a threshold matter, this court must determine whether, in his summary-judgment motion, Ortiz expressly identified a ground that was the basis of the trial court's partial summary judgment.

In his motion, Ortiz asserted that he is entitled to judgment as a matter of law as to the Bank Parties' claims on the Note because, under the plain language of the Letters, the Bank Parties "expressly renounced any and all further rights to assert claims against Ortiz." Courts analyzing a predecessor statute to section 3.604(a)(2) have concluded that, if the holder of a promissory note signs a writing in which the holder expressly renounces any claim on the note, this action is sufficient to discharge the note.[51] Under the unambiguous language of section 3.604(a), the Bank, without consideration, may discharge the obligation of Ortiz to pay the Note "by agreeing not to sue or otherwise renouncing rights against [Ortiz] by a signed record."[52] In his motion, Ortiz also asserted that, in the Letters, the

---

[49] *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

[50] *See Allen v. City of Baytown*, No. 01-09-00914-CV, 2011 WL 3820963, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (holding that traditional summary-judgment ground may be raised in a footnote that concisely states the ground without any argument or citation to legal authorities) (mem. op.); *Coleman v. Revak*, No. 01-07-00438-CV, 2008 WL 2466276, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2008, no pet.) (stating that traditional summary-judgment ground may be raised by merely identifying a theory of liability or defense) (mem. op.); *Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 441–42 (Tex. App.—Eastland 1995, writ denied) (holding that the following sentence, which lacked any citation to legal authority, was sufficient to expressly state a summary-judgment ground: "[defendant] moves for summary judgment against [plaintiff] on the affirmative defense of unenforceability pursuant to the Rule against Perpetuities."). *See also McConnell v. Southside Independent School District*, 858 S.W.2d 337, 340 (Tex. 1993) (stating in plurality opinion that summary-judgment grounds may be stated in the motion concisely, without detail or argument).

[51] *See Hall*, 254 S.W. at 1037–39; *Shaffer*, 109 N.E.2d at 26; *Bagley*, 112 P.2d at 464–66.

[52] Tex. Bus. & Comm. Code Ann. § 3.604(a).

Bank Parties expressly waived all demands and claims regarding any obligations or liabilities of Ortiz on the Note. In his summary-judgment motion, Ortiz expressly identified a defensive theory that the Bank Parties waived their claims based upon the Note by signing the Letters—writings in which the Bank Parties expressly renounced their rights against Ortiz on the Note.[53] Significantly, Ortiz did not limit this summary-judgment ground to common-law waiver. Though Ortiz stated this ground concisely and without argument or citation to section 3.604, he sufficiently raised this ground in his motion.[54] In granting partial summary judgment on this ground, the trial court did not grant summary judgment on a ground not expressly stated in Ortiz's summary-judgment motion. The majority's narrow reading of the summary-judgment grounds elevates form over substance and ignores the legal principles embodied in the motion.[55]

Because all of the arguments asserted by the Bank Parties under their first issue lack merit, this court should overrule this issue. This court also should sustain the Bank Parties' second issue and Ortiz's second cross-issue to the extent this cross-issue addresses the jury's damage finding as to Ortiz's trespass-to-realty claim against the Servicer. Thus, this court should modify the trial court's judgment (1) to delete any monetary recovery in favor of Ortiz and against the

---

[53] *See Coleman*, 2008 WL 2466276, at *2.

[54] *See Allen*, 2011 WL 3820963, at *7; *Coleman*, 2008 WL 2466276, at *2; *Conquistador Petroleum, Inc.*, 899 S.W.2d at 441–42.

[55] When the Letters were signed, Ortiz's suit to enjoin the foreclosure sale was still pending, though the foreclosure sale already had occurred and Ortiz later dismissed this suit. There is no evidence that the Bank had filed any counterclaims in this suit when the Letters were signed. The majority asserts that, even though Ortiz asserted waiver as a summary-judgment ground, "the parties were already in litigation with one another [when the Letters were signed]; thus, Ortiz was asking the trial court, in effect, to treat the [Letters] as releases." *Ante* at p. 15. None of the cases cited by the majority support its assertion that a party in litigation cannot waive or renounce its rights against another party in the litigation but must release its rights. And, this proposition is contrary to the unambiguous language of section 3.604 and Texas cases. *See* Tex. Bus. & Comm. Code Ann. § 3.604; *ASI Technologies, Inc.*, 75 S.W.3d at 547–49.

21

Bank, and (2) to award actual damages to Ortiz and against the Servicer in the amount of $74,500 rather than in the amount of $10,000.[56] After modifying the trial court's judgment in this way, this court should affirm the judgment.

### MANDAMUS

The Bank Parties assert judicial-foreclosure claims against Ortiz. On June 14, 2010, the trial court rendered an interlocutory take-nothing judgment against the Bank Parties on their claims arising from the Note secured by the deed-of-trust lien that provides the basis of the judicial-foreclosure claims. The parties' other claims were tried to the jury. After the jury's verdict, but before the trial court signed a judgment, the Bank Parties filed a notice of lis pendens regarding the Property, based upon the judicial-foreclosure claims. Shortly thereafter, Ortiz filed a motion to expunge the notice of lis pendens under Texas Property Code section 12.0071, a statute enacted by the Texas Legislature in 2009.[57] On the same day that it signed the final judgment ordering that the Bank Parties take nothing on their judicial-foreclosure claims, the trial court signed an order denying Ortiz's motion to expunge.

Ortiz then filed a petition for writ of mandamus in this court, asserting that the trial court abused its discretion by denying Ortiz's motion to expunge and by impliedly finding that the Bank Parties established by a preponderance of the evidence the probable validity of their judicial-foreclosure claims. This court requested a response from the Bank Parties, but, to date, they have not filed one.

---

[56] This modification would increase the actual damages awarded to Ortiz against the Servicer by the amount of the trespass-to-realty damages found by the jury, less the $12,500 settlement credit.

[57] *See* Act of May 21, 2009, 81st Leg., R.S., ch. 297, 2009 Tex. Gen. Laws 806, 806 (codified at Tex. Prop. Code Ann. § 12.0071 (West 2013)).

A writ of mandamus generally will issue to correct a clear abuse of discretion when there is no adequate remedy at law.[58] But, if a trial court abuses its discretion by failing to cancel or expunge a notice of lis pendens, mandamus relief is available without any need to show that there is no adequate remedy at law.[59] A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.[60] With respect to the resolution of factual issues, this court may not substitute its judgment for that of the trial court, even if this court would have decided the issue differently.[61] Instead, this court may not overturn the trial court's decision on factual issues unless the trial court reasonably could have reached only the opposite decision.[62] With respect to the resolution of legal issues, however, the review is much less deferential.[63] The trial court has no discretion in determining what the law is or in applying the law to the facts.[64] Therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion.[65]

Texas Property Code section 12.0071, entitled "Motion to Expunge Lis

---

[58] *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

[59] *See Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995) (per curiam). Thus, the only issue in the mandamus proceeding is whether the trial court abused its discretion by denying Ortiz's motion to expunge. *See id.* The majority relies upon the harmless-error rule applicable in civil appeals, but that rule applies only in civil appeals, not in mandamus proceedings. *See* Tex. R. App. 44.1 (a)(1) (stating that "[n]o judgment may be *reversed on appeal* on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . .") (emphasis added); *London v. London*, 342 S.W.3d 768, 776 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[60] *See Walker*, 827 S.W.2d at 839.

[61] *Id*. at 839–40.

[62] *See id*. at 840.

[63] *Id*.

[64] *Id*.

[65] *Id*.

Pendens," provides in pertinent part:

> (a) A party to an action in connection with which a notice of lis pendens has been filed may:
>
> (1) apply to the court to expunge the notice; and
>
> (2) file evidence, including declarations, with the motion to expunge the notice.
>
> (b) The court may:
>
> (1) permit evidence on the motion to be received in the form of oral testimony; and
>
> (2) make any orders the court considers just to provide for discovery by a party affected by the motion.
>
> (c) The court shall order the notice of lis pendens expunged if the court determines that:
>
> (1) the pleading on which the notice is based does not contain a real property claim;
>
> (2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or
>
> (3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d).
> . . .
> (e) The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows.[66]

Research reveals only one case in which the court interprets Property Code section 12.0071.[67] That case, however, deals with subsection (c)(1) of the statute rather

---

[66] Tex. Prop. Code Ann. § 12.0071 (West 2013).

[67] *See In re Cohen*, 340 S.W.3d 889 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding).

than subsection (c)(2), which is at issue in the mandamus petition before the court today.[68] The parties have not cited and research has not revealed any case in which a court has construed or applied subsection (c)(2), and its interpretation appears to be an issue of first impression.

Under its plain meaning, this subsection marks a substantial change in the legal standard by which parties can seek expunction of notices of lis pendens.[69] Before enactment of Property Code section 12.0071, a party seeking cancellation or expunction of a lis pendens notice had to show that the party filing the notice (the claimant) did not have pending claims that fell into one of the categories of claims contained in Property Code section 12.007(a).[70] This inquiry focused on the nature of the claims asserted and not on the merits or likelihood that the claims would be prosecuted successfully.[71] In enacting the new statute, the Legislature made a fundamental change by including language that requires consideration of the merits of the claim that forms the basis of the lis pendens. Under the plain meaning of Property Code section 12.0071, the trial court must grant a motion for expunction of a lis pendens notice if "the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim."[72] The new statute allows for discovery and evidentiary hearings regarding the evidence necessary to meet the claimant's burden of proof.[73] The language of Property Code section 12.0071(c) is substantially similar to language in California

---

[68] *See id.*

[69] *See* Tex. Prop. Code Ann. § 12.0071(c).

[70] *See* Tex. Prop. Code Ann. § 12.007(a) (West 2013).

[71] *See id.*; *In re Collins*, 172 S.3d 287, 293–94 (Tex. App.—Fort Worth 2005, orig. proceeding).

[72] Tex. Prop. Code Ann. § 12.0071(c)(2); *In re Cohen*, 340 S.W.3d at 892.

[73] *See* Tex. Prop. Code Ann. § 12.0071(b).

statutes.[74]   In the Texas statute, "probable validity" is not defined, but in the California statute, "'[p]robable validity,' with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim."[75]

The majority acknowledges that, in responding to Ortiz's motion to expunge, the Bank Parties had the burden of establishing by a preponderance of evidence the probable validity of their judicial-foreclosure claims.[76]   But, instead of reviewing the Bank Parties' response in the trial court to determine whether the trial court abused its discretion in concluding that the Bank Parties satisfied this burden, the majority summarily concludes that the trial court did not abuse its discretion because this court is reversing the trial court's judgment on appeal.[77]   In doing so, the majority fails to follow a fundamental rule of appellate practice which requires this court to review the trial court's ruling based upon the materials before the trial court when the trial court made the ruling at issue and not based upon other materials or upon events occurring after the trial court's ruling.[78]   Thus,

---

[74] *Compare* Tex. Prop. Code Ann. § 12.0071(c), *with* Cal. Civ. P. Code § 405.31 (West 2013) (stating that "the court shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim"); *id*. § 405.32 (West 2013) (stating that "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim").

[75] Cal. Civ. P. Code § 405.3 (West 2013).

[76] *See ante* at p. 34.

[77] *See id*.

[78] *See In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (noting that courts determine whether to grant mandamus relief based upon the record that was before the trial court when it made the ruling at issue); *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 n.9 (Tex. 1990) (stating that, in determining whether the trial court abused its discretion such that mandamus should issue, appellate courts do not consider evidence and subsequent events that were not before the trial court when it ruled); *Univ. of Tex. v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961) (holding that appellate court, in determining correctness of a trial court ruling, does not consider events that occurred subsequent to the ruling unless they deprive the appellate court of

in a mandamus proceeding such as this, in which subsequent matters (such as this court's opinion and judgment) do not deprive this court of jurisdiction, this court's review should focus on the state of affairs in the trial court at the time of the ruling.

The court's opinion and appellate judgment in today's case occurred after the trial court's denial of Ortiz's motion to expunge and were not before the trial court when it ruled. Accordingly, this court's opinion and judgment should not be considered in determining whether the trial court abused its discretion by concluding that the Bank Parties established by a preponderance of evidence the probable validity of their judicial-foreclosure claims. The majority incorrectly makes this determination based upon the outcome of the appeal rather than upon Ortiz's motion to expunge and the Bank Parties' response. In Property Code section 12.0071, the Legislature has provided that the trial court must grant a motion for expunction of a lis pendens notice if "the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim."[79] The Legislature has not provided an exception to this rule if an intermediate court of appeals reverses the trial court's take-nothing judgment on the real property claim and remands for a new trial.

## CONCLUSION

Words matter. Borrowers, lenders, and other parties who seek to resolve disputes through waivers of claims want to use language that a court will enforce by summary judgment; otherwise, they face unwanted transaction costs and the

jurisdiction); *Stephens County v. J.N. McCammon, Inc.*, 52 S.W.2d 53, 55 (Tex 1932) (stating that "[w]hen an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made"); *Keck v. First City Nat. Bank of Houston*, 731 S.W.2d 699, 700 (Tex. App.—Houston [14th Dist.] 1987, no writ) (concluding that, in reviewing a trial court ruling, it is improper for an appellate court to consider pleadings, actions by the parties, or actions by other courts taking place after the trial court rendered the ruling at issue, unless the subsequent matters deprive the appellate court of jurisdiction).

[79] Tex. Prop. Code Ann. § 12.0071(c)(2); *In re Cohen*, 340 S.W.3d at 892.

uncertainties of trial. If lenders are permitted to avoid summary judgment and pursue collection actions on unambiguously waived debt claims, waivers will hold little value for borrowers. Likewise, if courts applying the same interpretive principles do not grant summary judgment on unambiguous waivers of lender-liability claims, lenders will lose the ability to reliably settle those claims.

The language the majority finds ambiguous today is garden-variety waiver-and-release language, the sort used every day to settle disputes. Today's decision diminishes the chance for prompt enforcement of such unambiguous language through summary judgment, an unwelcome development that will tend to compromise the value and utility of the waiver and release in the public square. Instead of finding this waiver language ambiguous and sending the parties back to the trial court, this court should enforce the plain language of the Letters as written. By refusing to do so, the majority adds uncertainty and unpredictability to the law. The better course would be to hold the Bank to its unambiguous written word and thereby advance a jurisprudence that fosters a more predictable legal environment, reduces unnecessary litigation, and honors the rule-of-law values that make our justice system strong.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Brown, and Christopher. (Christopher, J., majority).